Ed PFEIFFER, Petitioner-Respondent,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM; Edward Weidner, Chancellor of the University of Wisconsin-Green Bay; William Kuepper, Vice-Chancellor of the University of Wisconsin-Green Bay; University of Wisconsin-Green Bay University Committee, Appellants-Petitioners.

Supreme Court

*No. 81–374. Argued November 29, 1982.—Decided January 5, 1983.*

(Also reported in 328 N.W.2d 279.)

For the appellants-petitioners the cause was argued by *Leroy L. Dalton,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the petitioner-respondent there was a brief by *Lee Cullen* and *Cullen & Weston,* Madison, and oral argument by *Lee Cullen.*

WILLIAM G. CALLOW, J.   This is a review of an unpublished decision of the court of appeals which modified and, as modified, affirmed an order of Brown County Circuit Court Judge Richard G. Greenwood. Judge Greenwood ruled that a contested case hearing is required on the decision of the University of Wisconsin-Green Bay (UWGB) to deny tenure to the respondent, Ed Pfeiffer.

Pfeiffer had a seven-year probationary appointment as an assistant professor at the UWGB. During the sixth year of his appointment, Pfeiffer became a candidate for tenure. Before a person is granted tenure, that person must receive the recommendation of several University governing bodies. The UWGB Executive Committee of the Professional Program in Education voted unanimously to recommend Pfeiffer for promotion to the tenured position of associate professor on December 5, 1978. On February 22, 1979, the Personnel Council at UWGB also unanimously recommended that Pfeiffer be granted tenure. Pfeiffer's bid for tenure was stopped, however, when George Rupp, Dean for Academic Affairs, declined to recommend his promotion. Because a probationary appointment may not exceed seven years[1] and a faculty

[1] The Wisconsin Statutes, Wisconsin Administrative Code, and the University of Wisconsin-Green Bay (UWGB) rules all place a seven-year ceiling on probationary faculty appointments. Sec. 36.13(2)(b), Stats., provides:

"A probationary appointment shall not exceed 7 consecutive academic years in a full-time position in an institution. A leave of absence, sabbatical or a teacher improvement assignment shall

member with two or more years of continuous service must be given notice at least twelve months prior to termination,[2] Dean Rupp's decision necessarily amount-

not constitute a break in continuous service nor shall it be included in the 7-year period."

Sec. UWS 3.04, Wis. Adm. Code, provides:

"**Probationary appointments.** Each institution's rules for faculty appointments shall provide for a maximum seven-year probationary period in a full-time position, and may provide for a longer maximum probationary period in a part-time position of at least half time. Such rules may permit appointments with shortened probationary periods or appointments to tenure without a probationary period. Provision shall be made for the appropriate counting of prior service at other institutions and at the institution. A leave of absence, sabbatical leave, or teacher improvement assignment shall not constitute a break in continuous service, nor shall it be included in the probationary period. Tenure is not acquired solely because of years of service."

UWGB 51.05B provides:

"*Length of Probationary Appointment.* A full-time probationary appointment shall not exceed seven academic years. A longer maximum probationary period is provided for part-time appointments of at least half-time."

[2] Sec. UWS 3.09, Wis. Adm. Code, and the UWGB *Personnel Procedures for Faculty* [hereinafter cited as *Personnel Procedures*], Section G, set forth identical notice periods for expiration of a probationary appointment. The UWGB *Personnel Procedures*, Section G, provides:

"*NOTICE PERIODS*

"1. *A faculty member who is employed on probationary appointment shall be given written notice of his or her reappointment or non-reappointment for another academic year in advance of the expiration of his or her current appointment as follows:*

"a. *When the appointment terminates at the end of an academic year, not later than 1 March of the first academic year and not later than 15 December of the second consecutive academic year of service;*

"b. *If the initial appointment terminates during an academic year, at least three months prior to its termination; if a second consecutive appointment terminates during the academic year, at least six months prior to its termination;*

ed to a nonrenewal of Pfeiffer's appointment. On May 10, 1979, Pfeiffer was notified that his appointment would terminate at the end of the 1979–80 academic year.

Pfeiffer appealed Dean Rupp's decision to the University Committee pursuant to the UWGB *Personnel Procedures for Faculty* [hereinafter cited as *Personnel Procedures*], Section J.[3] He alleged that in making the tenure decision Dean Rupp did not properly consider his qualifications and made completely unfounded and arbitrary assumptions of fact. On October 19, 1979, the University Committee issued a Decision and Report holding that the record did not support Pfeiffer's charges and that a remand of the matter to the Vice-Chancellor[4] for reconsideration would serve no useful purpose. Pfeiffer took no further steps to overturn the UWGB's decision to deny him tenure during the sixth year of his probationary appointment.

On December 17, 1979, during the seventh year of Pfeiffer's appointment, the Executive Committee of the Professional Program in Education again unanimously

---

"c. *After two or more years of continuous service at an institution of the University of Wisconsin System, such notice shall be given at least 12 months before the expiration of the appointment.*" (Emphasis in original.)

*See also* UWGB 51.07A.3.

[3] UWGB *Personnel Procedures*, Section J, provides in pertinent part:

"*APPEAL OF A NON RENEWAL DECISION*

"*A faculty member may appeal a non-renewal decision to the University Committee. Written request for appeal shall be forwarded by the faculty member to the University Committee within 20 days of receipt of the notice of non-renewal (25 days of notice if by first class mail).* If the faculty member wishes to have counsel present, he or she must so advise in writing, the chairman of the University Committee so that the University may have counsel present." (Emphasis in original.)

[4] The Vice-Chancellor is the successor to the office formerly entitled Dean for Academic Affairs.

recommended that Pfeiffer be granted tenure. Vice-Chancellor Kuepper, however, refused to forward the Executive Committee's recommendation to the Personnel Council for consideration. In a memorandum dated December 28, 1979, Kuepper stated: "Because the tenure review process ran its course during the sixth year of Dr. Pfeiffer's probationary period, I see no justification for initiating it again in the seventh year."

On April 16, 1980, Pfeiffer filed a petition for review in circuit court pursuant to Chapter 227, Stats. The circuit court concluded that the UWGB's decisions to deny Pfeiffer tenure in his sixth and seventh years were reviewable under Chapter 227. Accordingly, the court remanded the matter to the UWGB to hold a contested case hearing.

The court of appeals modified and, as modified, affirmed the circuit court's decision. The court found that UWGB's denial of tenure in Pfeiffer's sixth year was not reviewable because review proceedings had not been timely commenced. The court held, however, that Pfeiffer was entitled to tenure review in his seventh year, and the contested case provisions of Chapter 227 applied to the UWGB's tenure decision.

The issue presented on this review is whether Pfeiffer had a right to tenure review during the seventh year of his probationary appointment.[5]

The right to tenure review at UWGB is conferred and affected by certain statutes, administrative regulations, and rules promulgated by the University. Sec. 36.13 (1) (a) and (b), Stats., defines tenure appointment and probationary appointment as follows:

"(a) 'Tenure appointment' means an appointment for an unlimited period granted to a ranked faculty member

[5] The parties also raise the issue of whether the decision to grant or deny tenure is subject to the contested case provisions of Chapter 227, Stats. We do not reach this question in this case.

by the board upon the affirmative recommendation of the appropriate chancellor and academic department or its functional equivalent within an institution.

"(b) 'Probationary appointment' means an appointment by the board held by a faculty member during the period which may precede a decision on a tenure appointment."

In order to establish procedural and substantive guidelines for faculty appointments including tenure review, sec. 36.13(3), Stats., provides:

"**Rules.** The board and its several faculties after consultation with appropriate students shall adopt rules for tenure and probationary appointments, for the review of faculty performance and for the nonretention and dismissal of faculty members. Such rules shall be adopted under ch. 227."

In compliance with sec. 36.13(3), Stats., the University of Wisconsin Board of Regents has adopted Chapter UWS 3, Wis. Adm. Code. Secs. UWS 3.06(c)[6] and UWS 3.07(1)(a),[7] Wis. Adm. Code, require each institution to

---

[6] Sec. UWS 3.06(c), Wis. Adm. Code, provides:

"**Procedures.** The faculty and chancellor of each institution, after consultation with appropriate students, shall establish rules governing the procedures for renewal or probationary appointments and for recommending tenure. These rules shall provide for written notice of the departmental review to the faculty member at least 20 days prior to the date of the departmental review, and an opportunity to present information on the faculty member's behalf. The probationary faculty member shall be notified in writing within 20 days after each decision at each reviewing level. In the event that a decision is made resulting in nonrenewal, the procedures specified in UWS 3.07 shall be followed."

[7] Sec. UWS 3.07(1)(a), Wis. Adm. Code, provides:

"**Nonrenewal of probationary appointments.** (1)(a) Rules and procedures. The faculty and chancellor of each institution, after consultation with appropriate students, shall establish rules and procedures for dealing with instances in which probationary faculty appointments are not renewed. These rules and procedures shall provide that, upon the timely written request of the faculty

establish rules governing the procedures for renewal and nonrenewal of probationary appointments and for recommending tenure. In accordance with Chapter UWS 3, the UWGB faculty and chancellor adopted *Personnel Procedures* and UWGB Chapter 51 entitled, *Faculty Appointments and Temporary Teaching Appointments*. These rules, along with applicable statutes and administrative code provisions, govern the question of whether Pfeiffer has a right to tenure review during the seventh year of his probationary appointment.

Following Vice-Chancellor Kuepper's decision not to submit Pfeiffer's materials to the Personnel Council for tenure consideration, the Executive Committee of the Professional Program in Education asked the University Committee to interpret sections B.2, D.1, and D.2 of the UWGB *Personnel Procedures*. The Executive Committee apparently believed that Vice-Chancellor Kuepper violated these provisions. Sec. B.2 states:

"A faculty member may be considered for promotion in any year of his or her appointment if so requested by two members of his or her concentration executive committee, concentration professorial committee (or concentration advisory committee). Such a consideration must be with the knowledge and consent of the faculty member."[8]

Under section D.1[9] all recommendations on promotion and tenure are to be initiated by the concentration execu-

member concerned, the department or administrative officer making the decision shall, within a reasonable time, give him or her written reasons for nonrenewal. Such reasons shall be come a part of the personnel file of the individual. Further, the rules and procedures shall provide for reconsideration of the initial nonrenewal decision upon timely written request."

[8] We also note that section B.1 provides:

"A faculty member may request, in writing, of his or her concentration chairman consideration for promotion once in any academic year. This request is to be honored."

[9] Section D.1 provides:

"All recommendations on renewal or non-renewal, promotion and tenure shall be initiated by the concentration executive committee

tive committee. When the executive committee's recommendation is positive, section D.2[10] provides that the Dean for Academic Affairs (now the Vice-Chancellor) "shall forward the recommendation and documentation to the Personnel Council for advice."

The University Committee responded to the Executive Committee's request in a memorandum dated March 18, 1980. The memorandum which supported Vice-Chancellor Kuepper's actions reads in pertinent part:

(or the concentration committee of full professors in the case of associate professor to professor promotion considerations). It is the responsibility of the reviewing executive committee to solicit, receive, and show evidence of having considered the evaluations or recommendations of every curricular unit in which the faculty member has served. The units will determine, based on the participation of the faculty member, whether an evaluation or a recommendation is appropriate, except in the instance when a faculty member or his/her concentration executive committee requests that a recommendation be forwarded. Furthermore, an open meeting will be held in formulating the recommendation if such a meeting is requested by the faculty member. The chairman of *any* executive committee making a recommendation on renewal or nonrenewal, promotion and tenure, shall notify the faculty member in writing *20 days prior to the date of the executive committee review* held for the purpose of formulating that recommendation. This document shall be adequate notification to all faculty members in regard to periodic reviews affecting them." (Emphasis in original.)

[10] Section D.2 provides:

"The reviewing executive committee or concentration professorial committee shall forward its recommendation to the Dean for Academic Affairs. Where positive recommendations for tenure or promotion to associate professor are received, the Dean shall forward the recommendation and documentation to the Personnel Council for advice. Where positive recommendations for promotion to full professor are received, the Dean shall forward the recommendation and documentation to the standing professorial committee of six for advice. On receipt of the appropriate committee's advice, the Dean shall forward his/her recommendation (if positive) to the Chancellor. The Chancellor shall forward his/her recommendation (if positive) to the President."

"It is the judgment of the University Committee that the specific procedures spelled out for conduct of reviews for retention or promotion, for reconsideration in the event of negative decisions regarding renewal and/or tenure, and for appeal of nonrenewal decisions do not apply to a faculty member in the terminal year of his or her appointment. The faculty member in a terminal year of his or her appointment *may* be considered for promotion but there is nothing in the UWGB Personnel Procedures which *obligates* a reviewing body to honor such a request or to follow specific procedures in acting on the request since a decision has already been made in compliance with the Personnel Procedures."[11] (Footnote omitted, Emphasis in original.)

The UWGB reiterates this interpretation of its own rules in its brief to this court. We believe that the University Committee's interpretation is correct.

This court has long held that "the interpretation by an administrative agency of its own regulation is entitled to controlling weight unless inconsistent with the language

[11] The University Committee went on to explain that:

"In accord with these procedures, a faculty member who has been denied tenure prior to the sixth year of full-time service but has had his or her appointment renewed is entitled to further retention and tenure reviews, not to exceed one in any year, through the sixth year of the probationary period. A faculty member who has been denied tenure, has gone through reconsideration and appeal of nonrenewal procedures, and has been given a terminal year appointment has exhausted all procedures to which reviewing bodies of UWGB are obligated to respond. Any further action on a requested consideration for promotion would be at the discretion of the reviewing bodies.

"Given the interpretation of the Personnel Procedures and Chapter 51 of the Faculty Handbook outlined above, it is our opinion that Professor Pfeiffer, who is in the terminal year of his appointment, has exhausted all avenues for seeking redress open to him within UWGB. Vice Chancellor Kuepper is not obligated to follow specific procedures in acting on Professor Pfeiffer's consideration for promotion in this seventh and terminal year of his appointment."

of the regulation or clearly erroneous."[12] *Beal v. First Federal Savings & Loan Asso. of Madison,* 90 Wis. 2d 171, 183, 279 N.W.2d 693 (1979) ; *Vonasek v. Hirsch and Stevens, Inc.,* 65 Wis. 2d 1, 7, 221 N.W.2d 815 (1974) ; *Employers Mutual Liability Insurance Co. v. ILHR Dept.,* 62 Wis. 2d 327, 334, 214 N.W.2d 587 (1974) ; *Josam Mfg. Co. v. State Board of Health,* 26 Wis. 2d 587, 601, 133 N.W.2d 301 (1965). This rule of construction accords with the principle that "a construction which fosters the purpose of the rule is to be sought and is favored over a construction which will defeat the manifest object of the rule." *McGarrity v. Welch Plumbing Co.,* 104 Wis. 2d 414, 425, 312 N.W.2d 37 (1981). An administrative agency knows the specific purposes of the regulations it has promulgated. Moreover, an agency has a certain expertise in the area it is called upon to regulate. Thus we believe that an agency is in the best position to interpret its own regulations in accordance with their underlying purposes. For this reason, in construing such regulations, we ordinarily defer to the adopting agency's interpretation.

The court of appeals, however, rejected the UWGB's interpretation of its own rules. The appellate court noted that Personnel Procedure B provides that a faculty member may be considered for tenure in *any* year of his or her probationary appointment. Since the rules make no distinction between the seventh year and any other year,

[12] In *Udall v. Tallman,* 380 U.S. 1, 16–17 (1965), the United States Supreme Court articulated a similar standard of deference.

"When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

" 'Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. . . . [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–414."

the court of appeals concluded that Pfeiffer had a right to tenure review in his seventh year.

We disagree with the reasoning of the court of appeals. In rejecting the UWGB's interpretation of its rules, the court of appeals focused on one seemingly inconsistent section. The court of appeals erred in reading section B of the *Personnel Procedures* in isolation. The tenure review process is governed by several statutes, regulations, and university rules. These provisions must be construed together as a comprehensive regulatory plan. *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d at 427.

Although section B does state that a faculty member may be considered for tenure during any academic year, a review of the tenure provisions as a whole indicates that this right does not extend into the seventh year. UWGB 51.05B provides that a probationary appointment shall not exceed seven academic years. *See also* sec. 36.13 (2) (b), Stats.; sec. UWS 3.04, Wis. Adm. Code.[13] Section G.1.c[14] of the *Personnel Procedures* requires that a faculty member with two or more years of continuous service be given at least twelve months' notice prior to termination. *See also* UWGB 51.07A.3 and sec. UWS 3.09 (1) (c), Wis. Adm. Code. Finally, UWGB 51.05E.2 reads as follows:

"After not more than six years of full-time service at this University as an assistant professor, or after the equivalent of not more than six years of full-time service at this University in the ranks of instructor and assistant professor combined, an assistant professor shall be notified in writing by the concentration/professional program or the administration no later than the end of his/her sixth year that he/she will be recommended for tenure or will not be recommended for tenure. The above provisions do not preclude promotion and tenure after a period of service shorter than six years."

[13] *See* note 1, *supra* at 147.
[14] *See* note 2, *supra* at 148.

The aforementioned sections taken together with the other tenure provisions indicate that the regulatory plan contemplates a six-year period during which a probationary appointee has a right to tenure review in each academic year. If tenure is denied in the sixth year, the faculty member's probationary appointment is terminated upon twelve months' notice. Thus probationary appointments may last up to, but no longer than, seven years. Although tenure review may, at the University's discretion, be granted during the seventh year, we are convinced that the tenure provisions do not create a right to such review.

In sum, the UWGB University Committee's interpretation of the tenure provisions as a whole is neither clearly erroneous nor inconsistent with the regulatory language. Therefore, that interpretation is entitled to controlling weight. *Beal v. First Federal Savings & Loan Asso. of Madison,* 90 Wis. 2d at 183. We hold that Pfeiffer had no right to tenure review during the seventh year of his probationary appointment.

*By the Court.*—The decision of the court of appeals is reversed.

ABRAHAMSON, J., took no part.