Ralph M. WAGNER, Plaintiff-Appellant,

v.

State of Wisconsin DEPARTMENT OF HEALTH &
SOCIAL SERVICES, Patricia Goodrich, Denis
Moriearty, Gervase Thompson, St. Paul Fire & Marine
Insurance Company, and Juneau County, Defendants-
Respondents.

Court of Appeals

*No. 90-0658. Submitted on briefs October 9, 1990.—Decided
May 9, 1991.*

(Also reported in 471 N.W.2d 269.)

For the plaintiff-appellant the cause was submitted on the briefs of *Michael J. Ganzer* and *Daniel J. Miske* of *Fiorenza & Hayes, S.C.* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Donald J. Hanaway,* attorney

general, with *Robert D. Repasky,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Ralph Wagner appeals from an order dismissing his complaint against Denis Moriearty. On November 26, 1987, Wagner was the jailer in the Juneau County jail. Several inmates attacked him during their escape. Moriearty is a jail inspector employed by the Department of Health and Social Services. Wagner brought this action in negligence against Moriearty for damages resulting from his personal injuries.

The trial court granted Moriearty's motion for summary judgment and dismissed the complaint for two reasons. The court concluded that Moriearty is immune from suit and that no causal connection exists between Wagner's injuries and Moriearty's alleged violation of his duties. We conclude that Moriearty fails to establish he is immune from suit and that he has not established an unrebutted *prima facie* case that no such causal connection exists. We therefore reverse.

The theory of Wagner's complaint is that Moriearty violated sec. 46.17, Stats. (1985–86), and Wis. Adm. Code sec. PW–C 50.03(7) (1983), because he failed to order Juneau County to install "modern locking devices" on the security doors in the jail, and that the violation was a cause of Wagner's injuries. Wagner's injuries occurred in a section of the jail having six cells. Section 46.17(1), Stats., requires the department to "fix reasonable standards and regulations for the design, construction, repair and maintenance of . . . jails . . .." Section 46.17(3) provides that after a jail is occupied:

> [A]nnually or oftener thereafter, the department shall inspect it with respect to safety, sanitation, adequacy and fitness, and report to the authorities conducting

the institution any deficiency found, and order the necessary work to correct it or a new building. If within 6 months thereafter such work is not commenced, or not completed within a reasonable time thereafter, to the satisfaction of the department, it shall suspend the allowance of state aid for, and prohibit the use of such building until said order is complied with.

Wis. Adm. Code sec. PW-C 50.03(7) provides:

Modern locking devices must be installed on all security doors. Jail sections having multiple cells should be provided with selective locking devices so that doors can be opened and closed either individually or collectively.

A. OFFICIAL IMMUNITY

■Moriearty asserts that he is immune from suit. A public officer or employee in Wisconsin is immune from suit for damages for personal injuries caused by acts performed within the scope of the individual's public office. *C.L. v. Olson,* 143 Wis. 2d 701, 710, 422 N.W.2d 614, 617 (1988). The official immunity rule has its exceptions. It "affords no protection to a public officer or employee for (1) the negligent performance of a ministerial duty or (2) conduct that is malicious, willful and intentional." *Id.* at 710-11, 422 N.W.2d at 617 (footnote omitted). A public officer's duty is ministerial "only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents,* 72 Wis. 2d 282, 301, 240 N.W.2d 610, 622 (1976).

Wagner asserts that the duties of the department and its employees under sec. 46.17(1) and (3), Stats. (1985–86), are absolute, certain and imperative, and if a jail is deficient under the department's rules, a remedial order must be issued. The statute and the rule, in Wagner's view, impose ministerial and nondiscretionary duties, and therefore Moriearty has no immunity in this suit for damages resulting from his negligence. We analyze the statute and rule provisions individually.

■

We assume that Moriearty had a ministerial duty under sec. 46.17(3), Stats. (1985–86), to inspect the Juneau County Jail at least annually. According to his affidavit supporting his motion for summary judgment, Moriearty's last inspection was on April 21, 1987, and he reported to the sheriff for Juneau County on April 24, 1987. For purposes of summary judgment analysis, we assume the truth of factual assertions in an affidavit supporting the motion until they are controverted. Moriearty did not violate this ministerial duty.

The duty under sec. 46.17(3), Stats. (1985–86), to inspect for the qualities of "safety, sanitation, adequacy and fitness" and "report to the authorities conducting the institution any deficiency found, and order the necessary work to correct it or a new building" is discretionary. Opinions can vary with respect to each of those qualities. Whether a particular jail satisfies all or any of them is a matter of judgment, unless the department's rules have sharpened them to the point that determining their existence is mechanical and ministerial. Moriearty is therefore immune with respect to this duty.

Wagner contends that whether "modern" locking devices had been installed, as required by the first sentence in Wis. Adm. Code sec. PW–C 50.03(7) (1983), is a question of fact. We disagree. What is "modern" calls for

the exercise of judgment and discretion. To the extent Wagner attempts to hold Moriearty for negligence in failing to order the Juneau County Jail to install "modern locking devices" in the area where the assault occurred, Moriearty enjoys official immunity from suit.

We turn to the second sentence in Wis. Adm. Code sec. PW–C 50.03(7) (1983). It provides that jail sections having multiple cells "should" be provided with selective locking devices so that doors can be opened and closed either individually or collectively. Moriearty admits in his affidavit that the locking system in the six-cell areas of the Juneau County Jail permits the cells to be opened collectively but requires individual locking of the cells. Those cells therefore did not conform to this part of sec. PW–C 50.03(7). Since it is in the jail area containing those cells that the three inmates injured Wagner, we must determine whether the duty imposed on Moriearty by the second sentence is ministerial or discretionary.

Whether the duty imposed in the second sentence of Wis. Adm. Code sec. PW–C 50.03(7) (1983) is ministerial or discretionary is in doubt. The rule states that collectively closing doors "should" be provided. "Should" can be read either as a recommendation or as mandatory. Moriearty states in his affidavit that the rule "recommends" that jails use locking systems that permit the collective closing of cell doors. His averment is a legal conclusion, and we disregard it. *See Hopper v. City of Madison,* 79 Wis. 2d 120, 130, 256 N.W.2d 139, 143 (1977) (legal conclusions in summary judgment affidavits will be disregarded). We conclude that the rule is ambiguous.

However, according to Moriearty's affidavit the department may have interpreted the rule as imposing a discretionary duty. Moriearity avers:

11. During the period 1978 through 1988 affiant was aware that the Department did not require replacement of manual locking systems that did not allow collective closing of cells. Such systems are expensive and are not necessary for safety.

. . ..

14. . . .. Affiant also . . . was advised that the Department could not order the Jail or the County to replace the locking system with a collective closing system. Affiant was further aware that the Department would not direct the closing of a detention facility or the withholding of funds because the detention facility had a manual, single cell closing lock system.

. . ..

17. In affiant's opinion[1] the department was sufficiently satisfied with the efforts that the Juneau County officials were making in the maintenance and modifications to the Jail since 1978 to preclude any imposition of any sanctions.

An administrative agency's interpretation of its own regulation is entitled to controlling weight unless it is inconsistent with the language of the regulation or is clearly erroneous. *Pfeiffer v. Board of Regents,* 110 Wis. 2d 146, 154–55, 328 N.W.2d 279, 283 (1983). This rule accords with the principle that a construction fostering the purpose of the rule is favored. *Id.*

An administrative agency knows the specific purposes of the regulations it has promulgated. Moreover, an agency has a certain expertise in the area that it is called upon to regulate. Thus we believe that an agency is in the best position to interpret its own regulations in accordance with their underlying pur-

[1]Moriearty's "opinion" is a factual inference.

poses. For this reason, in construing such regulations, we ordinarily defer to the adopting agency's interpretation.

*Id.*

The deferential rule of construction described by the *Pfeiffer* court is an important part of official immunity. If an administrative agency interprets its own ambiguous rule, and its interpretation is reasonable, the agency's employees must be able to follow that interpretation without fear of liability. If the interpretation is that the rule imposes a discretionary duty, the agency employee who acts in accordance with that interpretation is entitled to official immunity. That conclusion is necessary if the public policy considerations behind the official immunity rule are to be satisfied. Those considerations are outlined in *C.L. v. Olson*, 143 Wis. 2d at 709, 422 N.W.2d at 616. They include the deterrent effect which the threat of personal liability might otherwise have on employees, with the result that they would be unduly timid in carrying out their duties.

The first question before us is therefore one of fact: What interpretation has the department given to the second sentence in Wis. Adm. Code PW–C 50.03(7) (1983)? If the department interpreted its rule as imposing a ministerial, mechanical or mandatory duty, Moriearty has no official immunity for failure to perform the duty. If the department's interpretation was that the duty was discretionary, a second question, one of law, arises: Was the department's interpretation reasonable?

Moriearty's affidavit is insufficient to establish how the department interpreted Wis. Adm. Code sec. PW–C 50.03(7) (1983). To support a motion for summary judgment, an affidavit must "set forth such evidentiary facts

326

as would be admissible in evidence." Section 802.08(3), Stats. Moriearty's affidavit does not. It avers little more than his own understanding and opinion of department policy, not the policy itself. He avers that he "was advised" that the department could not order the installation of a collective closing system. That he was "advised" is a fact, but that advice fails to establish the department's view. Moriearty did not submit any directives, instructional materials or depositions of supervisors that might establish the department's interpretation.[2]

Since we conclude that Moriearty has failed to establish the department's interpretation, we need not decide whether the interpretation he attributes to the department is reasonable. Moriearty has not established a *prima facie* defense of official immunity.[3]

## B. CAUSATION

[2]Moriearty also avers that he "was aware that the Department could not order methods of operation, or adequacy of staff, or enforce staffing, staff procedures. [Sic] Affiant had been advised specifically of this limitation by the department on the basis of an attorney general opinion" at 63 Op. Atty. Gen. 267 (1974). The cited opinion is inapposite. The adequacy of locks is not a "method of operation" or staffing matter. The attorney general was asked whether the department possessed the above-stated powers under secs. 46.16 and 46.17, Stats., and he concluded it did not. Of greater relevance to this case is the attorney general's observation that under sec. 46.17, "[t]he department may order correction of defects relating to safety, sanitation, adequacy or fitness, and may prohibit use of the building until the order is complied with." 63 Op. Atty. Gen. at 271.

[3]We do not decide whether Moriearty's duty is discretionary or ministerial. It is unnecessary for us to do so.

Because he has failed to establish that he is entitled to official immunity, we turn to whether Moriearty has established a *prima facie* defense that no causal connection exists between the alleged breach of his duty and Wagner's injuries. The test for causation is whether a defendant's negligence was a substantial factor in producing the injury. *Morgan v. Pennsylvania Gen. Ins. Co.,* 87 Wis. 2d 723, 735, 275 N.W.2d 660, 666 (1979). Causation is a question of fact that may be decided as a matter of law only when reasonable factfinders could not differ on the issue. *Id.* at 735-36, 275 N.W.2d at 666.

Moriearty relies on Wagner's deposition, during which Wagner prepared a sketch of the jail area in which he was attacked. The area is an "L." The vertical part consists of a hallway facing a dayroom and six cells. The horizontal part is the "front hall." A door opens from the front hall to the hall facing the dayroom and the cells. The attack occurred in the front hall at that door. The dayroom is nearest to the front hall.

Wagner deposed that an inmate, Williams, was in the exercise room in another part of the jail and wanted to return to his cell. Wagner walked down the front hall with Williams to the door leading to the hall facing the dayroom and cells. Through a window he saw two other inmates, Cooley and Sorenson, in the dayroom. The hall facing the cells and dayroom was "clear." Wagner unlocked the front hall door to admit Williams to the hall facing the cells and dayroom. When Wagner opened the door, Williams "jumped" him. They struggled in the front hall for perhaps five or ten seconds. Wagner tried to close the front hall door, but somebody pushed it open. Sorenson entered the front hall and joined Williams in beating Wagner. It is not clear whether Cooley joined the beating. The three inmates locked Wagner in

the dayroom and escaped from the jail. Wagner's version of these events is not controverted, and we accept it as true.

Moriearty suggests that Wis. Adm. Code sec. PW–C 50.03(7) (1983), as applied to the jail section where the beating occurred, requires a collective locking device only on the cell doors, not on the dayroom door. He argues that even if he had ordered the installation of such a locking device on the cell doors, that would not have helped Wagner, since the inmates who beat him were not in their cells when Wagner brought Williams to the section. Therefore, Moriearty's failure to order the locks required by the rule was not a cause of Wagner's injuries.

Wagner argues that the requirement of collectively closing doors in Wis. Adm. Code sec. PW–C 50.03(7) (1983) is not limited to cell doors, but includes "all security doors," as stated in the first sentence of that section. "All security doors" would include the door of the dayroom, Wagner argues, and if he had been able to close the dayroom door before or during the assault by Williams, he might have prevented the other inmates from joining in.

These arguments concern the extent of Moriearty's duty. The question is whether it was his duty to order collectively closing doors only for the cell doors, or also for the dayroom door. As we have said, an agency's interpretation of its own rule is entitled to weight. Here, however, neither side has submitted materials showing the department's interpretation.

Although the parties differ as to its meaning, we conclude that sec. PW–C 50.03(7) (1983) is not ambiguous. It requires a collectively closing door for the dayroom. The rule provides that "jail *sections*" of the type described should have locks allowing for collective

closing. (Emphasis added.) This jail section included the dayroom. Therefore, we must determine whether the lack of a collectively closing dayroom door was a cause of Wagner's injuries.

We conclude that a reasonable factfinder could find that the lack of a collectively closing dayroom door was a substantial factor in causing Wagner's injuries. Moriearty conceded in his deposition that "[i]f the doors would have been closed collectively, it may not have prevented the initial attack by the one prisoner, but it probably could have prevented the other prisoners from getting out." The factfinder could conclude that if assaulted by only Williams, Wagner might have prevailed or sustained injuries less severe than those he now alleges.

Moriearty argues that Wagner failed to follow proper jailing procedures when he unlocked and opened the front hall door in the company of one inmate while two other inmates were out of their cells. He argues that it was this failure by Wagner that caused Wagner's injuries, not the nature of the locks. The argument is more one of contributory negligence than causation. *See Morgan,* 87 Wis. 2d at 736, 275 N.W.2d at 666–67. If Wagner is found to be contributorily negligent, apportionment of negligence is ordinarily for the factfinder. *Id.* We cannot conclude that Wagner's possible negligence was so great as to bar his recovery as a matter of law.

Moriearty has failed to establish that he is immune from suit. A dispute of material fact exists with respect

to causation. We therefore reverse the summary judgment dismissing the complaint.

*By the Court.*—Order reversed.