Miguel GALLEGO and On Behalf of Himself
and all Others Similarly Situated,
Plaintiffs-Appellants,

v.

WAL-MART STORES, INC.
and Wal-Mart Stores East, Inc.,
Defendants-Respondents.†

Court of Appeals

No. 2004AP2533. *Submitted on briefs March 7, 2005.*
*—Decided October 20, 2005.*

2005 WI App 244

(Also reported in 707 N.W.2d 539.)

† Petition to review voluntarily dismissed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Noah M. Golden-Krasner* and

*David C. Bender* of *Porter Jablonski & Assoc., S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Naikang Tsao* and *Michael D. Leffel* of *Foley & Lardner LLP*, Madison.

A nonparty brief was filed on behalf of the appellant by *Stephen E. Meili* of *Consumer Law Litigation Clinic, University of Wisconsin Law School*, Madison.

Before Lundsten, P.J., Vergeront and Deininger, JJ.

¶ 1. DEININGER, J. Miguel Gallego appeals a judgment that dismissed his class-action complaint against Wal-Mart Stores, Inc. Gallego alleged in his complaint that Wal-Mart misrepresented the origin of salmon sold in its stores in violation of WIS. STAT. §§ 100.18 and 100.20 (2003–04).[1] The circuit court dismissed the complaint after concluding that Wal-Mart's alleged failure to disclose that the salmon it sold was artificially colored did not constitute a misrepresentation under § 100.18, and, further, that the violation of a food-labeling regulation was not privately actionable under § 100.20(5).

¶ 2. We affirm the dismissal of Gallego's claim under WIS. STAT. § 100.18 because a more specific statute, WIS. STAT. § 100.183, governs misrepresentations in the sale of "articles of food" and § 100.183 does not provide a private right of action. We conclude the circuit court erred, however, in dismissing Gallego's claim

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. The relevant portions of the cited statutes are quoted in the Analysis section of this opinion.

under Wis. Stat. § 100.20 because a violation of the food-labeling regulation in question may be pursued in a private action under § 100.20(5). Accordingly, we affirm the appealed judgment in part, reverse it in part and remand for further proceedings on Gallego's § 100.20 claim.

## BACKGROUND

¶ 3. We have before us a judgment dismissing Gallego's complaint for failure to state a claim on which relief may be granted. *See* Wis. Stat. § 802.06(2)(a)6. When reviewing a dismissal for failure to state a claim, we, like the circuit court, must accept as true the allegations of the plaintiff's complaint. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 11, 270 Wis. 2d 146, 677 N.W.2d 233.

¶ 4. Gallego alleged the following facts in his complaint. Gallego purchased artificially colored salmon from a store in Madison owned or operated by Wal-Mart Stores, Inc. He did so believing the salmon to be "naturally raised or wild" salmon because of its "pink or reddish coloring," instead of "farm-raised" salmon that has "gray, unappealing flesh." By concealing the fact that it was selling artificially-colored, farm-raised salmon, Wal-Mart misled Gallego and other consumers into buying more fish and paying a higher price than they would have if the true origin of the salmon had not been misrepresented. This is because consumers associate red or pink coloring with wild salmon, which are generally considered to be tastier and more nutritious than farm-raised salmon.

¶ 5. Gallego brought his action on behalf of himself and a class consisting of consumers who, during a specified period, purchased artificially colored salmon

from Wal-Mart's stores that was "not labeled or advertised as containing artificial coloring." Gallego claimed that "by putting artificially colored fish before consumers without conspicuously labeling it as artificially colored," Wal-Mart made "an affirmative statement that such fish is naturally colored." He sought to recover pecuniary damages under WIS. STAT. § 100.18 resulting from Wal-Mart's allegedly "untrue" and "deceptive" advertising. *Id*. In addition, he sought damages on behalf of himself and the class under WIS. STAT. § 100.20 for Wal-Mart's "unfair trade practice" of failing to disclose the artificial coloring in the salmon it sold, allegedly in violation of federal and state food labeling regulations. As additional remedies for these violations, Gallego requested a declaratory judgment and injunctive relief "prohibiting [Wal-Mart] from further engaging in unfair trade practices and using deceptive, untruthful, or misleading representations."[2]

¶ 6. Wal-Mart moved to dismiss Gallego's complaint for failure to state a claim on which relief may be granted. The circuit court granted the motion, concluding that Gallego could not proceed under either WIS. STAT. §§ 100.18 or 100.20. The court entered a judgment dismissing Gallego's complaint and he appeals.

## ANALYSIS

■

¶ 7. We review de novo the circuit court's dismissal of Gallego's complaint for failure to state a claim. *See Tietsworth*, 270 Wis. 2d 146, ¶ 11. We first address whether Gallego may sue Wal-Mart for misrepresenta-

---

[2] Gallego also pled an unjust enrichment claim but this claim was dismissed on stipulation of the parties and is not before us on appeal.

tion or deceptive advertising under Wis. Stat. § 100.18 for not labeling the salmon it sold as being artificially colored. The circuit court concluded, and Wal-Mart argues, that the conduct complained of constitutes a failure to disclose, not an affirmative misrepresentation, and hence, the conduct was not actionable under § 100.18 pursuant to the supreme court's holding in *Tietsworth. See Tietsworth*, 270 Wis. 2d 146, ¶ 40. Because we conclude that misrepresentations regarding the sale of food are governed by Wis. Stat. § 100.183, which does not provide a private cause of action, we do not address whether *Tietsworth* bars Gallego's § 100.18 claim.[3]

¶ 8. The question before us is one of statutory interpretation, and, thus, a question of law we decide de novo. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). We must begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the

---

[3] The Consumer Law Litigation Clinic, University of Wisconsin Law School, filed an amicus curiae brief in which it argued that Wal-Mart was guilty of an "affirmative, visual representation made by color" that is actionable under Wis. Stat. § 100.18. Because we conclude for a different reason that § 100.18 does not apply to the transaction at issue, we do not address the Clinic's arguments.

scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48.

¶ 9. WISCONSIN STAT. § 100.18 provides in relevant part:

> No ... corporation ..., with intent to sell, distribute, increase the consumption of or in any wise dispose of *any real estate, merchandise, securities, employment, service,* or anything offered by such ... corporation ... , directly or indirectly, to the public for sale, ... shall make, publish, disseminate, circulate, or place before the public, ... in this state, ... an advertisement, announcement, statement or representation of any kind to the public relating to such ... sale ... of such *real estate, merchandise, securities, service or employment* ... , which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Section 100.18(1) (emphasis added). The statute further provides that "[a]ny person suffering pecuniary loss because of a violation of this section ... may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees." WIS. STAT. § 100.18(11)(b)2.

¶ 10. A similarly worded statute follows closely after WIS. STAT. § 100.18. WISCONSIN STAT. § 100.183, entitled "Fraud, advertising foods," provides as follows:

> No ... corporation ... shall, with intent to sell, or increase the consumption thereof, ... make, publish, disseminate, circulate, or place before the public in this state, or cause, directly or indirectly to be made, published, disseminated, or placed before the public in this state, in a newspaper or other publication, or in the form of a book notice, handbill, poster, bill, circular or

pamphlet, or in any other manner, an advertisement of any sort *regarding articles of food,* which advertisement contains any assertion, representation or statement which is untrue, deceptive or misleading.

Wis. Stat. § 100.183(1) (emphasis added). Unlike § 100.18, however, § 100.183 does *not* provide for private suits to recover pecuniary losses from violators of its provisions.

■

¶ 11. The specific question we must answer is whether misrepresentations regarding the sale of articles of food are governed exclusively by Wis. Stat. § 100.183, or whether Wis. Stat. § 100.18 also applies to sales of food. Gallego argues that food is included within the scope of § 100.18 because it is "merchandise," and, thus, a private cause of action alleging misrepresentation in the sale of artificially-colored salmon may be brought under § 100.18. He cites *Tim Torres Enterprises v. Linscott,* 142 Wis. 2d 56, 62–65, 70–72, 416 N.W.2d 670 (Ct. App. 1987), for the proposition that a private action may be brought under § 100.18 because the suit in that case dealt with the sale of frozen custard.

¶ 12. We conclude that Gallego's reliance on *Tim Torres Enterprises* is misplaced. The appeal in that case was from a jury verdict that included damages awarded for false advertising under Wis. Stat. § 100.18. *Tim Torres Enterprises,* 142 Wis. 2d at 59. The questions before us were the sufficiency of the evidence to support the jury's verdict, an evidentiary issue and an asserted inconsistency in the verdict. *Id.* at 59–60. Because the issue was not raised, we neither discussed nor decided in *Tim Torres Enterprises* whether Wis. Stat. § 100.183

supplants § 100.18 when an alleged misrepresentation involves the sale of food as opposed to the sale of non-food items.[4]

■

¶ 13. The term "merchandise," as used in § 100.18 is not statutorily defined, and we may therefore consult a dictionary to determine its common and accepted meaning. *See Kalal*, 271 Wis. 2d 633, ¶¶ 53–54. THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1202 (2nd ed. 1987), provides the following as its first definition of "merchandise": "1. the *manufactured goods* bought and sold in any business" (emphasis added). The definition in the most recent edition of BLACK'S LAW DICTIONARY, however, does not restrict "merchandise" to manufactured items: "1. In general, a movable object involved in trade or traffic; that which is passed from hand to hand by purchase and sale." BLACK'S LAW DICTIONARY 1008 (8th ed. 2004). We conclude that, although "merchandise" may at times include articles of food, the

---

[4] One of the parties in *Winkelman v. Kraft Foods, Inc.*, 2005 WI App 25, 279 Wis. 2d 335, 693 N.W.2d 756, *review denied*, 2005 WI 134, 282 Wis. 2d 720, 700 N.W.2d 272 (WI Jun. 1, 2005) (No. 03–2355), argued that a food item (milk) was not "merchandise" within the meaning of WIS. STAT. § 100.18. *Id.*, ¶ 10. We nonetheless let stand an arbitrator's award based on the application of § 100.18 to a contract for the sale of milk. *Id.*, ¶¶ 13–19. We note, however, that we did *not* address the largely undeveloped argument regarding the definition of "merchandise," *id.*, ¶ 15, and we concluded only that the arbitrator's decision, even if erroneous, did not constitute a "perverse misconstruction or manifest disregard" of the law. *Id.*, ¶¶ 13–19. In short, as in *Tim Torres Enterprises v. Linscott*, 142 Wis. 2d 56, 416 N.W.2d 670 (Ct. App. 1987), we did not consider in *Winkelman* the question that is before us now—whether WIS. STAT. § 100.183 wholly supplants § 100.18 when the item sold is an "article[] of food."

term does not necessarily do so in all contexts. When the "statutory background"[5] of §§ 100.18 and 100.183 is considered, it becomes clear that the legislature does not intend "merchandise" in § 100.18 to include "articles of food."

¶ 14. The legislature originally enacted what is now WIS. STAT. § 100.18 in 1913. *See* 1913 Wis. Laws, ch. 510. What is now WIS. STAT. § 100.183 followed in 1927. *See* 1927 Wis. Laws, ch. 80; WIS. STAT. § 352.085(1) (1927). If the former statute covered the sale of food, the legislature would have had no reason to enact a separate statute to prohibit misrepresentations in the sale of food. Moreover, in 1969, the legislature renumbered the food-only provision as § 100.183, and, in separate legislation, created a private cause of action under § 100.18. *See* 1969 Wis. Laws, chs. 286 and 425. The fact that the legislature, in a single session, acted on both statutes and added a private cause of action to only one of them, is another strong indication that it intended two different anti-fraud provisions—one governing "real estate, merchandise, securities, service or employment" that creates a private cause of action, and the other governing "articles of food" that does not. *See* §§ 100.18 and 100.183.

---

[5] "Statutory background" refers to "previously enacted and repealed statutory provisions," as opposed to the "legislative history" of a provision, " 'which was never enacted' " by the legislature. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 52 n.9, 271 Wis. 2d 633, 681 N.W.2d 110. Although a statute's "legislative history" should not be consulted to ascertain the meaning of an unambiguous statute, " 'it is proper to look at a statute's background in the form of actually enacted and repealed provisions.' " *Id.* (quoting Cass R. Sunstein, *Interpreting Statutes in the Regulatory State,* 103 HARV. L. REV. 405, 430 (1989)).

¶ 15. Our reading of WIS. STAT. §§ 100.18(1) and 100.183 is further corroborated when statutory amendments enacted in 1980 are considered. Presently, the only sanction for violating § 100.183 is the criminal penalty specified in § 100.26(1).[6] Section 100.18(1), however, is amenable to only civil remedies and cannot be enforced via a criminal prosecution. *See* §§ 100.18(11) and 100.26(1), (4).[7] Thus, one might argue from the present allocation of remedies that the legislature intends both §§ 100.18(1) and 100.183 to apply to misrepresentations in the sale of food, having created the latter section for the purpose of making an additional, criminal enforcement mechanism available for food fraud. Prior to 1980, however, the criminal penalties set forth in § 100.26(1) *did* apply to violations of § 100.18(1). *See* WIS. STAT. § 100.26(1) (1977). The criminal penalty for violating § 100.18(1) was not removed until 1980, when it was replaced with a civil forfeiture. 1979 Wis. Laws, ch. 327 §§ 2, 3. In other words, for the first fifty years or more of the existence of §§ 100.18(1) and 100.183, criminal penalties were available for violations of both statutes, meaning that, if the legislature intended § 100.18(1) to apply to the sale of food, it did not need to create § 100.183 in order to authorize a criminal penalty for food fraud.[8]

---

[6] WISCONSIN STAT. § 100.26(1) provides as follows: "Any person who violates any provision of this chapter, except s. 100.18, 100.20, 100.206 or 100.51, for which no specific penalty is prescribed shall be fined not to exceed $200, or imprisoned in the county jail not more than 6 months or both."

[7] WISCONSIN STAT. § 100.26(4) provides as follows: "Any person who violates s. 100.18 (1) to (8) or (10) or 100.182 is subject to a civil forfeiture of not less than $50 nor more than $200 for each violation."

[8] When the legislature in 1927 created what is now WIS.

¶ 16. Finally, in addition to analyzing the language of a statute and its statutory background, we are "where possible to give reasonable effect to every word, in order to avoid surplusage." *Kalal*, 271 Wis. 2d 633, ¶ 46. If we were to accept Gallego's contention that Wis. Stat. § 100.18 applies to the sale of articles of food, Wis. Stat. § 100.183 would be rendered superfluous. Given this fact, and in light of the statutory background of the two sections described above, we are satisfied that the legislature intends two separate and different anti-fraud provisions, one governing non-food "merchandise" and the other, "articles of food."

¶ 17. Gallego also argues, however, that we must interpret the two statutes in such a way as to avoid conflict and "prevent repeal by implication." He notes that the supreme court explained in *State v. Dairyland Power Coop.*, 52 Wis. 2d 45, 187 N.W.2d 878 (1971), that "the rule that the more specific governs the more general is a rule of construction which is *not* applied automatically but is only resorted to when the legislative intent is not otherwise clear from a reading of the two provisions in question." *Id.* at 53 (emphasis added). The court further explained in *Dairyland Power Coop.* that the cited rule of construction "requires more than

Stat. § 100.183, it placed the new provision in a chapter entitled "Offenses Against Public Health" and specified these penalties for a violation: a fine of $50 to $200, a jail sentence of thirty to sixty days, or both. *See* Wis. Stat. § 352.085(3) (1927) (entitled "Fraud, advertising foods"). At that time, the predecessor of Wis. Stat. § 100.18(1), which the legislature had created several years earlier, was located in a chapter entitled "Offenses Against Property," and it specified the same criminal penalties as the newly enacted food fraud provision. *See* Wis. Stat. § 343.413 (1927) (entitled "Fraudulent advertising").

statute. It is also necessary that there be an irreconcil-
able conflict between the two provisions." *Id*. Gallego
asserts there is no irreconcilable conflict between WIS.
STAT. §§ 100.18 and 100.183, which means that both can
and should apply to misrepresentations involving the
sale of food.

¶ 18. We disagree with Gallego's contention that
our present analysis is governed by the supreme court's
discussion of general and specific statutes in *Dairyland
Cooperative*. Rather, we agree with Wal-Mart that both
sections are "specific" statutes. As we have explained,
WIS. STAT. § 100.18 deals with misrepresentations in the
sale of "real estate," non-food "merchandise, securities,
employment or service," while WIS. STAT. § 100.183
applies to misrepresentations "regarding articles of
food." The statutes are thus separate, different and
non-overlapping, and any rules for reconciling general
and specific statutes are not implicated.

¶ 19. Although we are satisfied from the language
of the two statutes and their statutory background that
misrepresentations in the sale of food are addressed
solely under WIS. STAT. § 100.183, we briefly consider
the parties' arguments regarding what purpose the
legislature sought to achieve by creating and retaining
a separate anti-fraud provision "regarding articles of
food." Gallego, of course, claims there is no discernible
purpose in excluding food advertising from the reach of
WIS. STAT. § 100.18, and that the legislative purpose of
deterring fraudulent advertising is best served by ap-
plying both statutes to food sales. In that way, according
to Gallego, the broadest possible range of remedies,
including private actions and suits for injunctive relief,
may be brought to bear against those who purvey
articles of food in a deceptive manner. Gallego's analysis

is not unreasonable, but it does not account for the statutory background of § 100.83 that we describe below.

¶ 20. Wal-Mart, on the other hand, posits that the narrower enforcement mechanism available under Wɪs. Sᴛᴀᴛ. § 100.183 is consistent with both federal food and drug law enforcement mechanisms and with the enforcement provisions provided in Wɪs. Sᴛᴀᴛ. ch. 97 (entitled "Food Regulation"). Wal-Mart's proffered explanation finds support in the statutory background of § 100.83. Immediately prior to its renumbering in 1969, § 100.183 was located within ch. 97. *See* 1969 Wis. Laws, ch. 286, § 41 (renumbering former § 97.64 as § 100.183). Chapter 97 makes several enforcement mechanisms available against those who violate food handling and labeling regulations, including civil and criminal penalties and injunctions. *See, e.g.,* §§ 97.12, 97.72, 97.73. Significantly, however, the chapter creates no private right of action. Thus, a plausible explanation of why the legislature would purposefully create a separate provision dealing with fraud in the sale of food that differs from an earlier statute dealing with fraudulent advertising of non-food items is that the food-fraud provision, § 100.83, is part of a larger, comprehensive scheme for regulating the handling, sale and labeling of food items.[9]

¶ 21. Thus, nothing in the parties' competing legislative-purpose arguments dissuades us from our conclusion that only Wɪs. Sᴛᴀᴛ. § 100.183, and not Wɪs. Sᴛᴀᴛ. § 100.18, applies to misrepresentations in the sale

---

[9] Additional support for this conclusion stems from the initial placement of the food-fraud provision in 1927 among other food and health-related provisions. See footnote 8, above.

of food items such as salmon. We conclude, therefore, that the circuit court did not err in dismissing Gallego's claim under Wis. Stat. § 100.18, although our conclusion rests on a different rationale. We turn next to Gallego's claim that Wal-Mart's failure to label its salmon as artificially-colored is actionable as an unfair trade practice under Wis. Stat. § 100.20. We agree with Gallego that his complaint states a claim under that section.

¶ 22. Wisconsin Stat. § 100.20(2)(a) gives the Department of Agriculture, Trade and Consumer Protection (DATCP) authority to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." The statute provides that the DATCP's trade regulations may be enforced by way of administrative proceedings initiated by the Department of Justice and through circuit court actions commenced by the DATCP for injunctions. *See* Wis. Stat. § 100.20(4) and (6). Section 100.20 also authorizes a private right of action:

> Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

Section 100.20(5).

¶ 23. Gallego's complaint alleges that he and other class members suffered pecuniary losses on account of Wal-Mart's violation of Wis. Admin. Code § ATCP 90.10(1), which requires "food sold or distributed for sale" in Wisconsin to be "labeled in compliance with applicable rules adopted by the United States food

244

and drug administration." Wal-Mart does not argue that the federal rules incorporated by reference in § ATCP 90.10(1) do not require the disclosure of artificial coloring in salmon. Rather, Wal-Mart notes that WIS. STAT. § 100.20(5) grants a private right of action for only the violation of an order *issued under this section*" (emphasis added). It contends that, because an explanatory note accompanying § ATCP 90.10 states that the DATCP adopted the rule "under s. 97.09(4), Stats.," and this note does not mention § 100.20(2), the circuit court correctly concluded that § ATCP 90.10 was not an unfair trade practice regulation enforceable by private action under WIS. STAT. § 100.20(5). We disagree.

¶ 24. The following explanatory note appears at the beginning of WIS. ADMIN. CODE ch. ATCP 90:

> This chapter is adopted under authority of ss. 93.07 (1), 97.09 (1) and (4), 97.42 (4) (j), 98.07 (3) and (4), and 100.20 (2), Stats. Violations of this chapter are subject to the penalties and remedies provided under ss. 97.72, 97.73, 98.26, 100.20 (5) and (6), and 100.26 (3) and (6), Stats.

The clear import of this note is that the DATCP views its authority for all of the regulations included within ch. ATCP 90 as flowing from numerous, overlapping statutory directives, one of which is the legislature's directive under WIS. STAT. § 100.20(2)(a) that the department may enact rules forbidding unfair trade practices. Moreover, the department plainly expresses its position in the introductory note that violations of any of the provisions in ch. ATCP 90 may be pursued by private parties under § 100.20(5).

¶ 25. Of what import, then, is the specific explanatory note that follows WIS. ADMIN. CODE § ATCP

90.10?[10] That note reads, in its entirety: "This section is adopted under s. 97.09 (4), Stats. See also s. 97.09 (1), Stats., related to food definitions and standards of identity, composition, quality and fill of container." We reject Wal-Mart's contention that the effect of the note following § ATCP 90.10 is to remove the provisions of that section from the operation of the introductory note, which states that the regulations in WIS. ADMIN. CODE ch. 90 derive in part from the department's trade-practice rulemaking authority under WIS. STAT. § 100.20(2), thus permitting their private enforcement under § 100.20(5). If an exception from the general note is what the DATCP meant to convey, it could easily have excepted § ATCP 90.10 from the reach of § 100.20(5), either in the introductory note or the note following § ATCP 90.10. The department did not do so.

¶ 26. Because the DATCP did not expressly except WIS. ADMIN. CODE § 90.10 from the reach of its introductory citation to WIS. STAT. § 100.20 in either explanatory note, the only reasonable interpretation of the note following WIS. ADMIN. CODE § ATCP 90.10 is that it simply provides additional information regard-

---

[10] We agree with Wal-Mart that, because both the general note at the beginning of WIS. ADMIN. CODE ch. ATCP 90 and the specific note following § ATCP 90.10 were adopted as parts of the same rulemaking order, we must either give effect to both and attempt to reconcile them, or ignore both as advisory and of no legal effect. Because the department is required by statute to state the statutory authority for its rules when promulgating them, *see* WIS. STAT. § 227.135(1)(c), we will consider its statements as persuasive and presumptively correct citations of its statutory authority for enacting both ch. ATCP 90 as a whole and § ATCP 90.10 in particular. *See Pfeiffer v. Bd. of Regents,* 110 Wis. 2d 146, 154–55, 328 N.W.2d 279 (1983) (An administrative agency's interpretation of its own regulation is entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous).

ing the statutory authority for that section, not a source of authority different from those specified in the chapter introductory note. In this regard, we note that WIS. STAT. § 97.09(1) and (4), as well as several other provisions in WIS. STAT. chs. 97 and 98, together with WIS. STAT. § 100.20, are all cited in the chapter introductory note as authority for the rules set forth in the chapter. This strongly suggests that the DATCP sees no conflict or incompatibility arising from the fact that the rules in ch. ATCP 90 identify activities that violate specific food or weights-and-measures regulatory statutes, and, at the same time, constitute unfair trade practices.

¶ 27. Why then would the department provide an additional reference to WIS. STAT. § 97.09 following WIS. ADMIN. CODE § ATCP 90.10, when it did not provide additional, more specific notes following any other section in ch. ATCP 90? Wal-Mart again asserts that the unique treatment of § ATCP 90.10 by the inclusion of a special note relating the rule to § 97.09(1) and (4) supports its interpretation that the rule was enacted under only that statute and not also under the authority of WIS. STAT. § 100.20. We agree with Gallego, however, that a more plausible explanation for the note following § ATCP 90.10 is that, unlike all of the other provisions in ch. ATCP 90, which set out department-formulated packaging and labeling requirements, § ATCP 90.10 adopts by reference rules formulated by two federal agencies, the Food and Drug Administration and the U.S. Department of Agriculture. The department may well have believed that its statutory authority to incorporate federal food labeling regulations wholesale, instead of developing independent rules, needed to be particularly highlighted.[11]

---

[11] In support of this rationale for the note following WIS. ADMIN. CODE § ATCP 90.10, Gallego points out that the DATCP

¶ 28. Finally, we address what some might see as a contradiction in our analysis. We conclude that WIS. STAT. § 100.183, and not WIS. STAT. § 100.18 with its private right of action, governs misrepresentations in the sale of food. Part of our rationale for this conclusion is that § 100.183 was once a part of WIS. STAT. ch. 97, and, thus, it is part of a comprehensive statutory scheme for the regulation of food, a scheme that provides several enforcement mechanisms but not a private right of action. We also conclude, however, that a private right of action is available to Gallego under WIS. STAT. § 100.20(5), and this conclusion is based on the fact that the DATCP has declared by rule that violations of certain food-labeling regulations are unfair trade practices.

¶ 29. We do not believe our conclusions are inconsistent with one another. In interpreting WIS. STAT. §§ 100.18 and 100.183, we properly considered the language of the two statutes and their statutory background. Even though the legislature has chosen to deal with misrepresentations in the sale of food separately and differently than it has with misrepresentations in the sale of non-food merchandise, this does not mean that, under entirely separate statutory authority, the DATCP cannot declare the violation of certain food-labeling regulations to be an unfair trade practice. Put another way, even though we conclude there is no direct

explained the following in the "Analysis" included in its order promulgating chapter ATCP 90:

> Under [WIS. STAT. §] 97.09(1) ... federal rules related to food definitions and standards of identity, quality and fill of container are automatically enforceable under state law. In order to facilitate enforcement of other [federal Nutrition Labeling and Education Act] labeling rules under state law, this rule incorporates FDA and USDA rules by reference under [WIS. STAT. §] 97.09(4).

legislative authorization of a private right of action for misrepresentations "regarding articles of food," nothing in either WIS. STAT. § 100.20 or WIS. STAT. ch. 97 evinces a legislative intent to preclude the department from declaring by rule that a violation of WIS. ADMIN. CODE § ATCP 90.10 is an unfair trade practice amenable to private enforcement action under § 100.20(5).

¶ 30. Accordingly, we conclude that the circuit court erred in dismissing Gallego's claim under WIS. STAT. § 100.20(5) alleging a violation of WIS. ADMIN. CODE § ATCP 90.10. We remand to the circuit court for further proceedings on Gallego's § 100.20 claim.

## CONCLUSION

¶ 31. For the reasons discussed above, we affirm the circuit court's order insofar as it dismissed Gallego's claim under WIS. STAT. § 100.18. We reverse the dismissal of Gallego's claim under WIS. STAT. § 100.20(5) and remand for further proceedings on that claim consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.