G & G Trucking, Inc., Petitioner-Appellant,†

v.

Wisconsin Department of Revenue, Respondent-Respondent.

Court of Appeals

*No. 02–2648. Submitted on briefs March 10, 2003.—Decided October 9, 2003.*

2003 WI App 228

(Also reported in 672 N.W.2d 80.)

† Petition to review denied 2-24-04.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert A. Schnur* and *Douglas A. Pessefall* of *Michael Best & Friedrich LLP* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *F. Thomas Creeron, III*, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Dykman, and Lundsten, JJ.

¶ 1. DYKMAN, J. G&G Trucking, Inc. (G&G) appeals from a judgment affirming a Wisconsin Tax Appeals Commission decision that G&G's aircraft were subject to use tax under WIS. STAT. § 77.53(1)

(2001–02).[1] G&G argues that because it leased the aircraft to two charter companies, it did not "use" the aircraft within the meaning of § 77.53(1). The commission concluded that G&G exerted sufficient right and power over the aircraft to constitute "use" under the statute. We agree and affirm.

## BACKGROUND

¶ 2. `The material facts are undisputed. G&G Trucking is a Wisconsin corporation, engaged in interstate trucking and delivery of metal products, machinery and other cargo. During the relevant time period, 1990 to 1997, G&G owned a total of four aircraft, but not more than two aircraft at the same time. G&G did not pay sales or use tax (or provide an exemption certificate) when it acquired the aircraft or when it purchased related maintenance services and supplies. Because it lacked both the facilities to store the aircraft and the employees to fly them, as well as the licenses and certifications required by law, G&G leased the aircraft to two charter companies, Wisconsin Aviation and Milwaukee General Aviation, Inc. Over time, Wisconsin Aviation leased all four aircraft; Milwaukee General leased one aircraft beginning in September 1996.

¶ 3. By leasing out its aircraft, G&G accomplished at least two objectives. First, it made a profit on the transaction. Second, G&G decreased its transportation costs when chartering aircraft.

¶ 4. G&G entered into oral leases with Wisconsin Aviation and Milwaukee General. Under the terms of the agreements, the charter companies had possession

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

of the aircraft and were responsible for all insurance, registration, licensing, cleaning and maintenance, although Wisconsin Aviation could bill certain costs, such as maintenance, to G&G. In addition, the charter companies provided and paid the pilots, and were required to keep the aircraft in a safe and secure location. They had the sole responsibility for scheduling the use of the aircraft. In return, G&G received payments from Wisconsin Aviation and Milwaukee General based on the number of hours each aircraft was chartered. Any of the parties could terminate a lease agreement upon providing thirty-days' notice.

¶ 5. In general, a party who chartered an aircraft from Wisconsin Aviation paid an initial charter fee, a pilot fee and a per-hour fee, the latter including gasoline for the aircraft. In contrast, when G&G chartered aircraft, it paid no initial charter fee and paid Wisconsin Aviation a lower hourly rate.[2] However, G&G did pay a pilot fee and the cost of the fuel for the flight. If one of its own aircraft was not available, G&G did not have "bumping rights" under the lease agreement; G&G had to either find alternative transportation or cancel the trip. Alternative transportation could include "trading hours" with the owner of other aircraft leased to Wisconsin Aviation. When trading hours, G&G paid the same lower hourly rate the owner of the aircraft paid when chartering its aircraft from Wisconsin Aviation. Wisconsin Aviation did not separately charge G&G for chartering aircraft but offset that amount against the monthly rental fee Wisconsin Aviation paid to G&G. During the period at issue, 1990 to 1997, G&G char-

---

[2] G&G never chartered its aircraft from Milwaukee General Aviation.

tered its own aircraft for 10.8 percent to 20.5 percent of the total hours those aircraft were chartered each year.

¶ 6. The Wisconsin Department of Revenue issued a Notice of Field Audit Action on February 15, 1999, assessing G&G sales and use tax, plus interest, penalties and late fees of $404,017, for the period 1990 through 1997. G&G objected to the assessment and filed a petition for redetermination. When that was denied, G&G filed a petition for review with the commission.

¶ 7. The commission affirmed the assessment, concluding that G&G's purchase of the aircraft and related supplies and services was "more than 'solely for lease or rental,' " and therefore subject to the use tax. The commission's decision includes two opinions, one by Commissioner Don Millis and one by Commissioner Thomas Boykoff. The opinions use different reasoning, but both conclude that the use tax applied to G&G's aircraft.

¶ 8. The Millis opinion described the issue as not involving any tax exemption statutes but solely concerning whether "use," as defined by WIS. STAT. § 77.51(22)(a), included G&G's leasing of aircraft to the charter companies. Noting that "use" includes the exertion of right or power over tangible personal property, the Millis opinion concluded, based on the undisputed facts, that: "G&G had the right to use the aircraft at issue and, in fact, used them . . . . For G&G to be treated like any other charter user, the charter company would have to possess the absolute right to deny G&G access to G&G's aircraft for any reason whatsoever."

¶ 9. The Boykoff opinion similarly concluded that G&G's aircraft were subject to use tax, but first analyzed the issue in terms of whether G&G met the "solely

for resale" exemption from use tax provided by WIS. STAT. § 77.51(14). The term "resale" also encompasses lease and rental. Section 77.51(14)(j); WIS. ADMIN. CODE § TAX 11.29(2)(a).[3] Because G&G's reason for purchasing the aircraft was twofold (to lease them to Wisconsin Aviation and to save money on transportation expenses), the Boykoff opinion rejected G&G's contention that the purchases were "solely for lease or rental." Then, considering whether G&G had "used" its aircraft in a manner that triggered the use tax, the Boykoff opinion concluded that the facts demonstrated that G&G received preferential treatment in the chartering of its aircraft from Wisconsin Aviation. Therefore, while incidental or de minimus use would not subject a purchase to the use tax, in this case, G&G's chartering of its own aircraft, under advantageous terms, "exceeded any reasonable incidental or de minimus use standard," and constituted "use" of the aircraft for purposes of WIS. STAT. § 77.53(1).

¶ 10. G&G petitioned the circuit court for review of the commission's decision upholding the tax assessment, and the circuit court affirmed the commission. G&G appeals.

## DISCUSSION

¶ 11. On appeal, we review the commission's decision and not the circuit court's. *Hafner v. DOR*, 2000 WI App 216, ¶ 3, 239 Wis. 2d 218, 619 N.W.2d 300. The commission's findings of fact are not in dispute. The application of a statute to undisputed facts presents a

---

[3] WISCONSIN ADMIN. CODE § TAX 11.29(2)(a) provides: "A lessor's purchase of tangible personal property to be used solely for lease or rental shall be exempt as a purchase for resale."

question of law and we are not bound by an administrative agency's legal conclusions. *Anderson v. DOR*, 169 Wis. 2d 255, 262, 484 N.W.2d 914 (1992). However, we generally accord one of three levels of deference to an agency's legal conclusions: great weight, due weight, or de novo review. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996).

¶ 12. The parties disagree regarding the level of review to apply to the commission's interpretation of WIS. STAT. §§ 77.53 and 77.51(22)(a). Because we would affirm the commission's decision under any standard of review, we need not decide the appropriate level of deference.

■

¶ 13. We now consider whether G&G's aircraft and purchase of related services and supplies are subject to use tax. WISCONSIN STAT. § 77.53(1) provides in part:

> [A]n excise tax is levied and imposed . . . on the storage, use or other consumption in this state of tangible personal property purchased from any retailer, at the rate of 5% of the sales price of that property; and on the storage, use or other consumption of tangible personal property manufactured, processed or otherwise altered, in or outside this state, by the person who stores, uses or consumes it, from material purchased from any retailer, at the rate of 5% of the sales price of that material.

As defined in WIS. STAT. § 77.51(22)(a):

> "Use" includes the exercise of any right or power over tangible personal property . . . incident to the ownership, possession or enjoyment of the property . . . including installation or affixation to real property and

including the possession of, or the exercise of any right or power over tangible personal property by a lessee under a lease . . . .

¶ 14. Pursuant to WIS. STAT. § 77.51(14) and WIS. ADMIN. CODE § TAX 11.29(2), property used "solely for lease and rental" is exempt from the use tax. However, G&G states that it is not relying on any statutory exemption in its challenge of the tax assessment.[4] Accordingly, we confine our discussion to whether, as defined by § 77.51(22)(a), G&G "used" its aircraft in such a manner that it is liable for use tax under WIS. STAT. § 77.53(1). Were this a question of whether G&G's use fell under one of the exemptions to the use tax, we would resolve any ambiguity against the exemption. *La Crosse Queen, Inc. v. DOR*, 208 Wis. 2d 439, 446, 561 N.W.2d 686 (1997) (tax exemption statutes are to be strictly construed). However, because this issue involves the imposition of a tax, any ambiguity in the statute is to be construed in favor of the taxpayer. *DOR v. Horne Directory, Inc.*, 105 Wis. 2d 52, 57, 312 N.W.2d 820 (1981).

¶ 15. Two criteria determine whether a taxpayer "uses" tangible personal property for tax purposes. First, the taxpayer must "own, possess or enjoy the property in Wisconsin." *Horne*, 105 Wis. 2d at 61.

---

[4] In his opinion, Commissioner Boykoff discussed whether G&G's use of its aircraft qualified for this exemption, and concluded that it did not because, by purchasing the aircraft in part to reduce its transportation expenses, G&G's acquisition was not "solely for lease or rental." In contrast, Commissioner Millis concluded that "[t]he issue in this case is whether G&G used the aircraft at issue. There is no exemption statute involved."

Second, the taxpayer must "exercise some right or power over the tangible personal property in Wisconsin. " *Id.*; Wis. Stat. § 77.51(22)(a). G&G's ownership of the aircraft leased to the charter companies is undisputed. Thus, imposition of the use tax turns on whether, given the terms of the lease and G&G's chartering of its own aircraft, the commission properly concluded that G&G exerted a "right or power" over the aircraft, thereby meeting the second prong of the "use" definition.

¶ 16. The department argues that by retaining rights associated with ownership, G&G "used" the aircraft it leased to Wisconsin Aviation. Specifically, the department points to the lease provisions under which G&G paid no initial charter fee, paid an hourly rate at or near cost, as opposed to what Wisconsin Aviation would charge a third party, and had the right to trade hours with owners of other leased aircraft, thereby paying a discounted hourly rate even when its own aircraft were not available. Given these circumstances, the department asserts that G&G exercised the requisite right or power over the aircraft and is liable for use tax.

¶ 17. G&G denies that the terms of the leases allowed it a right or power over the aircraft, contending that its use of the aircraft is comparable to that of a business person flying on a commercial airline, and thus the frequency of the charters is not relevant. G&G also notes that it did not have an "unfettered" right to charter aircraft from Wisconsin Aviation because the company could have refused to charter to G&G. Finally, G&G argues that the second criteria for use, the exercise of a right or power over the property, is not present when it receives an economic benefit, in the form of its favorable lease/charter arrangement with Wisconsin

Aviation, but does not physically control or possess the aircraft. These arguments are unavailing.

¶ 18. G&G is correct that, *by itself,* leasing its aircraft to the charter companies, does not expose it to use tax liability. The purchase of property "solely for lease or rental" is exempted from the use tax. WIS. ADMIN. CODE § TAX 11.29(2). Further, we agree that a taxpayer's purpose in entering into a transaction, viewed in isolation from other factors, is not dispositive of whether the property is subject to use tax. As stated in *DOR v. Sterling Custom Homes*, 91 Wis. 2d 675, 679, 283 N.W.2d 573 (1979), "it is the substance and realities of a taxpayer's activities that are determinative of the Department's power to tax." Thus, whether or not Wisconsin Aviation profited on the charters to G&G is not relevant because the focus of our inquiry is G&G's right or control over the aircraft. Here, the substance and realities of the lease agreements contradict G&G's claims that chartering its aircraft from Wisconsin Aviation is comparable to a business person purchasing a flight on a commercial airliner. While in both cases the passenger receives a transportation service, G&G receives benefits, in the form of a special hourly rate and the right to trade hours, that are a direct product of its ownership of the aircraft. In contrast, the ordinary passenger on a commercial flight has no such leverage to obtain a reduced fare.

¶ 19. Second, although the lease agreements did not provide G&G with an absolute right to charter its own aircraft at a reduced rate, the agreement allowed G&G to trade hours with another owner and still pay a lower hourly rate and no initial charter fee. G&G chartered aircraft from Wisconsin Aviation for a substantial number of flight hours over the years. While

the lease did not require Wisconsin Aviation to charter aircraft to G&G, and did not confer "bumping rights" that would ensure G&G's access to its aircraft, as discussed below, G&G regularly availed itself of its chartering rights under the lease.

¶ 20. Nor do we accept G&G's contention that, under *Horne*, 105 Wis. 2d 52, exerting a right or control over property requires that the taxpayer physically possess or control the property for there to be a taxable use as defined by Wis. Stat. § 77.51(22)(a). In *Horne*, the taxpayer, Horne, produced telephone directories that were printed out-of-state and then mailed or shipped by the printer directly to Wisconsin telephone subscribers. *Id.* at 53–54. Apart from a few directories the printer sent to Horne, the latter never had physical possession of the directories in Wisconsin. *Id.* The supreme court concluded that Horne could not be assessed use tax on the directories. *Id.* at 62. Applying the two-part statutory definition of use, the court first considered whether Horne owned, possessed, or enjoyed the directories. *Id.* at 61. It concluded that neither ownership nor constructive possession transferred to Horne because by law, the shippers were deemed the printer's agents and thus ownership remained with the printer until delivery of the directories to the telephone subscribers. *Id.* at 58–59. The court then defined "enjoyment" as requiring the realization of something beyond the economic benefit of completing the transaction such that Horne had "the benefit of applying the tangible property to its normal use," which in the case of telephone directories, was to obtain names, addresses and phone numbers. *Id.* at 60. In light of the function of telephone directories, the court concluded that without actual or constructive possession, Horne could not "enjoy" the directories. *Id.* at 62. Although the directo-

ries were not taxable because Horne did not own, possess or enjoy them, the court also addressed the second component of "use," whether Horne exercised a right or power over the tangible personal property. *Id.* at 61. The court determined that Horne's actions did not meet that standard: "The only 'right or power' exercised over the directories in this state was exercised by the printer, who had possession and control over them at all times through its delivering agents, and by their ultimate recipients, the subscribers." *Id.* at 60.

¶ 21. To support its argument that there is no taxable use without physical possession and control, G&G points to the courts statement in *Horne* that use and enjoyment were not shown when "[t]he only benefit which inured to Horne was an economic one which flowed from the fulfillment of its contractual obligations with the telephone companies," as well as the court's conclusion that the printer was the only party to exercise a right or power over the directories because it had possession and control over them until possession transferred to the subscribers. *Id.* at 61. Based on these statements, G&G reads *Horne* as mandating physical possession and hands-on control of property in Wisconsin in order to satisfy the "right and power" element of the statutory definition of use.

██

¶ 22. We do not read *Horne* as holding that, for use tax purposes, a taxpayer does not assert "any right or power" over tangible personal property when the taxpayer's benefit from the property is solely economic in nature. Whether a taxpayer uses property is a two-part inquiry. In *Horne*, the court rejected the department's argument that an economic benefit was sufficient to establish the "ownership, possession or enjoyment" prong of the statutory definition. *Id.* Al-

859

though the court stated that "it is the subscriber, not Horne, who has the use and enjoyment of the directories," this sentence is not part of the court's discussion of the power and control requirement, and cannot be read as describing the boundaries of power and control. *Id.* Here, G&G's ownership of the aircraft is not at issue and we are concerned only with whether G&G exercised a right or power over its property after leasing it to the charter companies. Thus we are presented with an issue not discussed in *Horne*: whether the broad language in the use tax statute, "the exercise of *any* right or power," encompasses financial or economic control as well as physical control. We conclude that it does.

¶ 23. First, as noted, the plain language of Wis. Stat. § 77.51(22)(a) does not require that a party's right or power over the property be physical in nature. Once it is determined that a taxpayer owns, possesses or enjoys the property, if the taxpayer also asserts any significant right or power over it, he or she has then "used" the property for tax purposes. And, although *Horne* discusses the "right or power" prong of "use" in terms of whether the printer or Horne had possession and control of the telephone directories, that case is factually distinguishable. Horne's economic benefit was the completion of its contract to produce directories for the telephone companies. G&G, however, under its lease agreements, could charter its own aircraft at rates not available to third parties (or trade hours with another aircraft owner for the same net effect), thereby obtaining favorable treatment in addition to the benefit of leasing its aircraft to Wisconsin Aviation. Because G&G's ownership of the aircraft was the sole factor that allowed it to receive preferential charter rates, it ex-

erted power or control over the aircraft every time it chartered them from Wisconsin Aviation or traded hours.[5]

¶ 24. In sum, G&G's interpretation of WIS. STAT. § 77.51(22)(a) as precluding a taxable use unless there is physical control or possession of the property is neither reasonable nor a valid extension of the court's holding in *Horne*. Accordingly, we conclude that G&G's charters from Wisconsin Aviation constituted a taxable "use" for purposes of WIS. STAT. § 77.53(1), and that this use was not incidental or de minimus, as G&G chartered its own aircraft at preferential rates for as much as twenty percent of the annual charter hours recorded by those aircraft. Whether we defer to the commissioner or not, we conclude that the commission properly upheld the departments assessment of use tax against G&G.

*By the Court.*—Judgment affirmed.

---

[5] An example reveals the results that would follow if we adopted G&G's argument that only physical control of the taxpayer's property can trigger the use tax. Under G&G's reasoning, it could have chartered its aircraft from Wisconsin Aviation at a rate of $1.00 per hour, and still not have exercised any power or control over the property because the benefit was solely economic.