WISCONSIN DEPARTMENT OF REVENUE,
Petitioner-Respondent,†

v.

RIVER CITY REFUSE REMOVAL, INC.,
Respondent-Appellant.

Court of Appeals

*2004AP2468. Oral argument May 9, 2005.
—Decided February 2, 2006.*

2006 WI App 34

(Also reported in 712 N.W.2d 351.)

† Petition to review granted 5-9-06.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James R. Lowe* and *Barbara J. Janaszek* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee. There was oral argument by *Barbara J. Janaszek*.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *F. Thomas Creeron III*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *F. Thomas Creeron III*.

Before Lundsten, P.J., Dykman and Deininger, JJ.

¶ 1. DEININGER, J. River City Refuse Removal, Inc., a wholly-owned subsidiary of Browning-Ferris Industries, Inc., appeals a circuit court order that reversed a Tax Appeals Commission ruling and order. The Tax Appeals Commission concluded that certain transfers of fixed assets from other Browning-Ferris subsidiaries to River City Refuse were not subject to use

tax because: (1) the transferring subsidiaries lacked "mercantile intent" and were therefore not "retailers" for use tax purposes; and (2) the transfers were not made "for consideration," as is required before use tax may be imposed on a transfer. The circuit court reversed the Commission's ruling. We conclude, however, that the Commission's interpretation of the relevant use tax statutes is entitled to due weight deference, its interpretation is reasonable and the Department of Revenue's proffered interpretation is not more reasonable.

¶ 2. The Commission also set aside a negligence penalty the Department had imposed on River City's use tax delinquency. We conclude the Commission's determination that River City had shown good cause for its actions is entitled to great weight deference and was reasonable. Accordingly, we reverse the circuit court's order and reinstate the Commission's ruling and order.

## BACKGROUND

¶ 3. River City Refuse Removal, Inc., is a Wisconsin corporation and a wholly-owned subsidiary of Browning-Ferris Industries, which, in turn, is a publicly traded corporation with annual revenues exceeding five billion dollars. Browning-Ferris has several other wholly-owned subsidiaries in various states that, like River City, are engaged in the business of hauling refuse and recyclables for residences and businesses. During the relevant time period, River City held a "Wisconsin consumer use tax permit."

¶ 4. Browning-Ferris developed a practice whereby it periodically assessed the equipment needs of each subsidiary and, based on current business volumes and trends, directed that various assets be transferred

among its subsidiaries according to their respective needs. At issue in this case are the transfers to River City of certain fixed assets (trucks, tractors, and tractor-trailers) from other Browning-Ferris subsidiaries during 1994–1997. The assets were between two and four years old at the time of the transfers. The Commission concluded that River City "made no payment of cash or other consideration for intercompany transfers of fixed assets," and further that there was no "expectation or requirement that cash or any other consideration was to be paid" for the transferred assets.

¶ 5. Browning-Ferris and its subsidiaries employed the accrual method of accounting, which requires transactions to be reflected at the time they occur, irrespective of when or if actual payments are exchanged. The parent corporation, Browning-Ferris, employed consolidated accounting for all its subsidiaries, pursuant to Generally Accepted Accounting Principles (GAAP), and it filed consolidated federal income tax returns. River City, which filed its own, separate Wisconsin franchise/income tax returns, retitled the assets it received from other subsidiaries (if necessary) and made appropriate entries in its financial records, according to Browning-Ferris accounting policies and practices. Specifically, River City added the book value of assets it received from other subsidiaries to its "intercompany payables" account, while the transferring subsidiaries reflected the same amounts in their respective "intercompany receivables" accounts. River City valued the fixed assets it received at their net book value (original purchase price minus accumulated depreciation previously taken by the transferring company) and continued to depreciate the assets, reporting as income any gains over their depreciated value when it sold or disposed of them. Browning-Ferris tracked

634

these intercompany transfers in its own accounting records, and, if accounted for correctly by the subsidiaries, the transactions netted to zero on the parent company's consolidated financial statements.

¶ 6. The Department audited River City for the years 1994 through 1997. Upon discovering that River City had not paid use tax on fixed assets it received via intercompany transfers, the Department assessed use tax on the book values at the time of the transfers from the various Browning-Ferris subsidiaries. The total assessment was for $144,010.33, comprised of $88,877.86 in unpaid tax, $32,912.70 interest, and a $22,219.47 negligence penalty.[1]

¶ 7. River City appealed the assessment on the fixed-asset transfers and the negligence penalty to the Commission. The Commission set aside the use tax assessment on the intercompany transfers, concluding these transfers of fixed assets among Browning-Ferris subsidiaries were not subject to use tax. The Commission had previously addressed use tax liability on similar facts involving another Browning-Ferris subsidiary, Browning-Ferris of Wisconsin, Inc. *See Browning-Ferris Industries of Wisconsin, Inc. v. DOR*, Wis. Tax Rptr. (CCH) ¶ 400-469 (WTAC 2000).[2] That ruling involved transfers of tangible personal property, includ-

---

[1] The assessment included tax, interest and penalty on certain acquisitions by River City other than the intercompany fixed-asset transfers. River City, however, conceded its liability for use tax on its receipt of the other items of tangible personal property. The taxability of only the intercompany transfers of fixed assets is at issue in this appeal.

[2] The Department issued a Notice of Nonacquiescence with the Commission's ruling in *Browning-Ferris Industries of Wisconsin, Inc. v. DOR*, as permitted under WIS. STAT. § 73.01(4)(e)2 (2003–04). The effect of the Notice is that, while binding on the

635

ing fixed assets such as trucks, tractors and tractor-trailers, from Browning-Ferris and its subsidiaries to Browning-Ferris of Wisconsin during 1989–1993. Despite some minor factual differences between the two cases, the Commission concluded on cross-motions for summary judgment that the "great similarities between the current case and the earlier [*Browning-Ferris of Wisconsin*] case compel the Commission to reach the same conclusion here as it did in the prior case."

¶ 8. Thus, as it did in its *Browning-Ferris of Wisconsin* ruling, the Commission concluded that, in order to be taxable for use tax purposes, a transfer must involve "remuneration or consideration." The Commission concluded that the present transfers "resulted in bookkeeping entries on the receipt of the assets, involved no exchange of money or other consideration and no expectation of payment, and resulted in [River City] receiving no invoice or other bill," and therefore did not involve consideration for the purposes of imposition of use tax. The Commission, relying on two appellate opinions interpreting the term "retailer" for sales tax purposes,[3] also articulated a "separate basis" for its present ruling, concluding that the transferring subsidiaries were not "retailers" for the purposes of the use tax.

¶ 9. With regard to the negligence penalty the Department had assessed against River City, the Commission determined that River City had acted reasonably in not changing its sales and use tax practices

parties in that case, "the Commission's conclusions . . . are not binding upon or required to be followed by the [Department] in other cases."

[3] *Kollasch v. Adamany*, 104 Wis. 2d 552, 313 N.W.2d 47 (1981); *Frisch, Dudek and Slattery, Ltd. v. DOR*, 133 Wis. 2d 444, 396 N.W.2d 355 (Ct. App. 1986).

pending the final resolution of the *Browning-Ferris of Wisconsin* case, which had addressed the taxability of intercompany fixed-asset transfers and other issues. The Commission noted that the prior ruling was not final until the supreme court denied review,[4] and concluded that River City's actions during the audited years were "due to good cause and not due to neglect." *See* WIS. STAT. § 77.60(3) (2003–04).[5] Accordingly, in addition to setting aside the use tax assessment on the fixed-asset transfers, the Commission also reversed the negligence penalty.

¶ 10. On review, the circuit court reversed both aspects of the Commission's ruling and ordered the Department's assessment reinstated. River City appeals.

## ANALYSIS

¶ 11. We begin with a brief description of the statutes establishing a use tax in Wisconsin.

¶ 12. WISCONSIN STAT. § 77.53(1) provides that "an excise tax is levied and imposed on the . . . storage, use or other consumption in this state of *tangible personal property purchased* from any *retailer*, at the rate of 5% of the sales price of that property" (emphasis added).

---

[4] Whether motor vehicles and equipment that Browning-Ferris of Wisconsin used in its garbage hauling and removal business were exempt from sales and use tax under WIS. STAT. § 77.54(26m) (exemption for waste reduction and recycling machinery and equipment) was the subject of a 2001 unpublished decision of this court. *See Browning-Ferris Industries of Wisconsin, Inc. v. DOR*, No. 00–3091, unpublished slip op. (Wis. Ct. App. June 28, 2001).

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

The emphasized terms are defined by statute. "Tangible personal property" is "all tangible personal property of every kind and description." WIS. STAT. § 77.51(20). A "purchase" occurs when "title, possession, ownership, enjoyment, or use" of "tangible personal property" is transferred "by: cash or credit transaction, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatever . . . for a consideration." *See* § 77.51(12)(a). Finally, a "retailer" includes (1) a "seller who makes any sale of tangible personal property"; (2) "[a]ny person making any retail sale of a motor vehicle . . . registered or titled, or required to be registered or titled, under the laws of this state or of the United States"; and (3) "[e]very person engaged in the business of making sales of tangible personal property." *See* § 77.51(13)(a), (am) and (b).

¶ 13. Also of relevance are WIS. STAT. § 77.51(14) and (14g), which describe transactions that are and are not considered "sales" (or "equivalent terms" such as " 'sale, lease or rental,' 'retail sale,' or 'sale at retail' ") for sales and use tax purposes. The transfers at issue in this appeal (transfers of tangible personal property constituting fixed assets between wholly-owned subsidiaries of a common parent corporation) are not specifically described as falling within or without the definition of "sales" subject to the use tax.[6] In the absence of

[6] We note that statutes in some jurisdictions specifically address the type of intercompany transfer at issue here. For example, COLO. REV. STAT. § 39–26–102(10)(k) (2000) provides that the term 'sale' for sales/use tax purposes does not include

[t]he transfer of assets between parent and closely held subsidiary corporations, or between subsidiary corporations closely held by the same parent corporation . . . . [A] closely held subsidiary corporation is one in which the parent corporation owns stock possessing at least eighty percent of the total combined voting

express statutory inclusion or exclusion, the Commission concluded that the "unambiguous" language of the relevant statutes did not impose a use tax on the instant transfers because "no property was 'purchased' from a 'retailer' within the meaning of § 77.53(1) and (2)." The Commission explained that "to find otherwise would not only contradict the express language of the statute, but would also improperly construe an imposition statute in favor of imposition." *See Kearney & Trecker Corp. v. DOR*, 91 Wis. 2d 746, 753, 284 N.W.2d 61 (1979) ("When the legislature imposes a tax, it must do so in clear and express language with all ambiguity and doubt in the particular legislation being resolved against the one who seeks to impose the tax.").

¶ 14. The principal question before us is whether the Commission's interpretation of the foregoing statutes, and its application of those statutes to the present facts, should be sustained on judicial review.

### Standard of Review

¶ 15. We review the Commission's decision, not that of the circuit court, and we do so de novo, owing no deference to the circuit court's conclusions. *See Advance Pipe & Supply Co. v. DOR*, 128 Wis. 2d 431, 434, 383 N.W.2d 502 (Ct. App. 1986). Accordingly, rather than addressing River City's assertions of error in the circuit court's decision and order, we organize our analysis around the errors the Department asserts the

power of all classes of stock entitled to vote and owns at least eighty percent of the total number of shares of all other classes of stock.

Colo. Rev. Stat. § 39–26–102(10)(k) (2000).

639

Commission committed when it ruled the Department improperly assessed use tax on the fixed asset transfers to River City.

¶ 16. Application of a statute to undisputed facts[7] is a question of law and a reviewing court is not bound by the agency's legal conclusions. *G & G Trucking, Inc. v. DOR*, 2003 WI App 228, ¶ 11, 267 Wis. 2d 847, 672 N.W.2d 80. However, when reviewing an administrative agency's interpretation of a statute, we will often defer to the agency's interpretation. *Zignego Co. v. DOR*, 211 Wis. 2d 819, 823, 565 N.W.2d 590 (Ct. App. 1997).

¶ 17. An agency's statutory interpretation is accorded "great weight" if the following conditions are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). When we give great weight deference, we will sustain an agency's

---

[7] With one possible exception, the parties do not take issue with what the Commission identified as "undisputed material facts." The Department maintains that River City received invoices for the transferred assets and also that it made payments on its intercompany payables account. River City disputes this characterization of the treatment of the intercompany transfers among Browning-Ferris subsidiaries. This disagreement regarding the details of Browning-Ferris's method of accounting for the transfers is not material to our disposition of the appeal.

reasonable conclusion, even if an alternative conclusion is more reasonable. *Id.* at 287.

¶ 18. A lesser level of deference, "due weight" is appropriate

> when the agency has some experience in an area, but has not developed the expertise that necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court . . . . [W]e will not overturn a reasonable agency decision that comports with the purpose of the statute unless we determine that there is a more reasonable interpretation available.

*Zignego Co.*, 211 Wis. 2d at 823–24. Finally, if the issue before the agency is clearly one of first impression, or when the agency's position on the issue has been so inconsistent so as to provide no real guidance, we review the agency's interpretation of the statute de novo. *Id.* at 824.

¶ 19. The Department argues we should interpret the statutes at issue de novo, according the Commission's interpretation no deference whatsoever.[8] We conclude, however, that the combination of the

---

[8] The Department's argument in favor of de novo review of the Commission's statutory interpretation relies in part on our conclusion in *Frisch*, 133 Wis. 2d 444, that "sales tax statutes are not technical in nature. They are written in everyday language and we are equally competent to interpret them." *Id.* at 446. Unlike in the present case, however, the Commission apparently could not point in *Frisch* to a prior ruling on the issue in question (liability of a law firm for sales tax on photocopies billed to clients), there being no mention in our opinion of such an assertion. Here, not only has the Commission previously ruled on the precise question before it in this case

Commission's delegation of authority from the legislature to resolve state taxation disputes, *see* WIS. STAT. § 73.01(4)(a), and its prior opportunity to analyze the statutory language at issue (in *Browning-Ferris of Wisconsin*) entitles its present ruling to at least due weight deference. *See Zignego*, 211 Wis. 2d at 826. The Commission's present position is not inconsistent with its prior ruling. To the contrary, the Commission confirmed the statutory analysis it employed in *Browning-Ferris of Wisconsin* (lack of consideration) and provided an additional rationale for its conclusion (transferring subsidiaries not "retailers"). As the supreme court has explained:

> The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question. Since in such situations the agency has had at least one opportunity to analyze the issue and formulate a position, a court will not overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available.

*UFE*, 201 Wis. 2d at 286–87.[9]

---

(liability of a Browning-Ferris subsidiary for use tax on intercompany transfers of fixed assets), but in so doing, the Commission expressly applied our conclusion in *Frisch* that to be deemed a "retailer," one must engage in a " 'mercantile' transaction." *Id*. at 448. In short, the fact that we engaged in a de novo review in *Frisch* does not dissuade us that, in this case, the Commission has met the prerequisites for according its ruling due weight deference.

[9] For the reasons we discuss below, we accord the Commission's ruling on the negligence penalty great weight deference.

¶ 20. Thus, our focus must be on whether the Commission's interpretation of the use tax statutes in this case is reasonable, and, if so, whether the Department has proffered a more reasonable interpretation. The specific questions are whether the transferring subsidiaries were "retailers" for purposes of use tax liability and whether River City gave consideration for the fixed assets it received from its sister corporations. Because we conclude that the Commission's interpretation is reasonable, and the Department's proffered interpretation is not more reasonable, we reverse the circuit court's order and reinstate the Commission's ruling setting aside the use tax assessment on the fixed assets received by River City from its sister corporations.

*Were the transferring subsidiaries "retailers"?*

¶ 21. The Commission, relying on *Kollasch v. Adamany*, 104 Wis. 2d 552, 313 N.W.2d 47 (1981), and *Frisch, Dudek and Slattery, Ltd. v. DOR*, 133 Wis. 2d 444, 396 N.W.2d 355 (Ct. App. 1986), concluded that the transferring subsidiaries lacked "mercantile intent" because River City did not pay money or provide other consideration upon receipt of fixed assets through intercompany transfers, and there was no expectation that River City would make future payment for the assets. We do not necessarily share the Commission's view that the statutory language at issue is free of ambiguity.[10] We do agree, however, with the Commission's observation that, to the extent that there is ambiguity in the statutes

---

[10] The Wisconsin Supreme Court has concluded, for example, that the several statutory definitions of the term "retailer" tend to "obscure rather than clarify the term," and it thus resorted instead to dictionary definitions of that term. *Kollasch*, 104 Wis. 2d at 566.

imposing the use tax, they must be construed in favor of the taxpayer. *See, e.g., G & G Trucking*, 267 Wis. 2d 847, ¶ 14.

¶ 22. The Department contends that the transferring subsidiaries in this case come within three separate statutory definitions of "retailer." The first, in WIS. STAT. § 77.51(13)(a), defines a retailer as "every *seller who makes any sale* of tangible personal property" (emphasis added). Second, under § 77.51(13)(b), a "retailer" includes "[e]very person *engaged in the business of making sales* of tangible personal property" (emphasis added). Finally, because some or all of the fixed assets transferred to River City were "motor vehicles," the Department claims that § 77.51(13)(am) also applies to the transferring subsidiaries: "retailer" includes "*any person making any retail sale of a motor vehicle* . . . registered or titled, or required to be titled, under the laws of this state or of the United States" (emphasis added).

¶ 23. We conclude the Commission reasonably determined that the transferring subsidiaries were not retailers under the definition in WIS. STAT. § 77.51(13)(a). The supreme court determined in *Kollasch* that, in order to be a "retailer" within the meaning of that paragraph, a transferor of tangible personal property that is not "engaged in the business of making sales," must engage in a transaction "with a consumer in hopes of making a profit on the transaction," thereby rendering the transaction a "mercantile" one. *Kollasch*, 104 Wis. 2d at 567–68.[11]

---

[11] We note that *Kollasch* and *Frisch* involved taxpayers on whom the Department had assessed liability for sales tax. At the

¶ 24. The Department contends, however, that the religious order, which, in furtherance of its religious beliefs, served the meals whose taxability were at issue in *Kollasch*, should be distinguished from the transferring corporations in this case, which the Department describes as "large, sophisticated waste hauling operations whose purpose was to make a profit" and "the epitome of profit-making mercantile enterprises." Because the overall goal of Browning-Ferris and its subsidiaries is to maximize profits for Browning-Ferris shareholders, and because the transactions in question were in furtherance of that goal, the Department maintains we must conclude that the intercompany transfers of fixed assets were "mercantile transactions." That is, the Department maintains that the overarching profit-seeking purpose of Browning-Ferris and its subsidiaries satisfies the "mercantile intent" requirement and a separate showing of that intent for any particular type of transfer is not required.

¶ 25. We disagree with the Department that, in order to determine whether the transferring corporations had "mercantile intent," we are to look, not at the individual transactions at issue, but instead to the Browning-Ferris enterprise as a whole. The Department acknowledges, as it must, that in *Frisch*, we concluded that a law firm's overall profit-seeking purpose did not render its "sale" of photocopies to its clients mercantile transactions. *See Frisch*, 133 Wis. 2d at 448–49. Rather, we analyzed the particular transactions at issue to determine whether they were pursued with mercantile intent, and concluded they were not. *Id*. The Department argues that, in *Frisch*, we erroneously

time of those decisions, Wis. STAT. § 77.51(13)(a) and (b) were numbered § 77.51(7)(a) and (b), but the relevant text of the paragraphs has not changed.

extended the *Kollasch* analysis to for-profit enterprises. It points out that we also explained in *Frisch* that the photocopy charges at issue were exempt from sales tax because they were incidental to the provision of non-taxable legal services. *Frisch*, 133 Wis. 2d at 448–49. In the Department's view, it was thus unnecessary for us to conclude that no sales tax was due because the law firm lacked mercantile intent when billing its clients for photocopies.[12]

¶ 26. We are, of course, bound by our holding in *Frisch*,[13] as was the Commission. Moreover, our conclusion in *Frisch* that a lack of mercantile intent rendered the law firm's billings for photocopies non-taxable is consistent with the supreme court's conclusion in *Kollasch* that "[t]he taxability of a sale depends on the specific circumstances of the transaction to which it relates rather than of the parties to it." *Kollasch*, 104 Wis. 2d at 564. Here, as in *Frisch*, the transfers were accomplished essentially "at cost" (original price of assets minus depreciation), not at a profit-generating market or retail price. The Browning-Ferris subsidiaries shifted fixed assets among themselves in order to more efficiently carry out the overall corporate enterprise, not to make a profit on the transactions in and of themselves.

¶ 27. In short, the Commission's conclusion that the transferring companies were not retailers within the meaning of Wis. Stat. § 77.51(13)(a) comports with

---

[12] We concluded in *Frisch* that "the purpose of separate itemization was not to make a profit, but only to fairly distribute photocopying costs amount clients in fair proportion. Charges to clients for photocopying . . . always approximated actual costs of production." *Frisch*, 133 Wis. 2d at 449.

[13] *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

the judicial analyses in *Kollasch* and *Frisch*.[14] The Commission's interpretation is thus reasonable and the Department's alternative interpretation is not more so.[15] The Commission did not specifically address whether, even though the transactions at issue were not "mercantile" in nature, the transferring subsidiaries might still be "retailers" under § 77.51(13)(am) because the assets at issue were motor vehicles, or under 13(b) because the subsidiaries were "engaged in the business of making sales." Even if we were to accept the Department's contention that the transferring subsidiaries were retailers under the definitions in Wis. Stat. § 77.51(13)(am) or (b), or both, the Commission's ruling is still affirmable if its second basis for setting aside the tax assessment (that the transfers did not involve consideration) satisfies the due weight deference standard of review.[16]

---

[14] We note that the Legislature has amended Wis. Stat. § 77.51(13)(a), effective January 1, 2006, to provide that a "retailer" includes "[e]very seller who makes any sale, *regardless of whether the sale is mercantile in nature,* of tangible personal property." *See* 2005 Wis. Act 25, § 1503 (emphasis added). The amended language appears to be in response to *Kollasch* and *Frisch.* The transfers at issue in this appeal predate the effective date of the amended language.

[15] The Department also urges us to adopt the circuit court's view that Wis. Stat. § 77.51(13)(a) applies only to "occasional sales." The Department maintains that the law firm in *Frisch* prevailed because it demonstrated that its sales of photocopies were "occasional." We do not agree with this reading of *Frisch* because there is nothing in our opinion to suggest that our holding rested on a determination that the sales of photocopies were occasional sales.

[16] Even though we do not address the Department's arguments regarding the definitions of "retailer" in Wis. Stat. § 77.51(13)(am) and (b), we briefly summarize those argu-

¶ 28. We next address, therefore, whether the Commission's conclusion that the transfers lacked consideration was reasonable and whether the Department's argument to the contrary is more reasonable.

### Did the transfers involve consideration?

¶ 29. As we have noted, the Commission provided two independent rationales for setting aside the use tax

ments. The Department asserts that the transferors were WIS. STAT. § 77.51(13)(am) "retailers" because they sold motor vehicles required to be retitled and relicensed under the laws of Wisconsin, and these sales were not exempt from sales and use tax. *See* WIS. STAT. § 77.54(5)(b) and (c); WIS. ADMIN. CODE § TAX 11.83(2)(a) (June 1991); *Cf.* WIS. STAT. § 77.61(1)(c). River City concedes that it retitled and relicensed the vehicles in Wisconsin but argues that paragraph (am) applies only to "retail" sales and the transfers at issue in this case were not "retail." We note, however, that the terms "sale" and "sale at retail" are treated by the legislature as synonymous. *See* WIS. STAT. § 77.51(14). Neither *Kollasch* nor *Frisch* involved the sale of motor vehicles, and thus, neither case addresses the definition of "retailer" in § 77.51(13)(am).

The Department also maintains that, even if the transferring entities were not paragraph (a) or (am) retailers, they were "engaged in the business of making sales," and were thus retailers under WIS. STAT. § 77.51(13)(b). The supreme court noted in *Kollasch* that entities who are "retailers" by virtue of WIS. STAT. § 77.51(13)(b) because they are "engaged in the business of making sales" must pay sales tax "on the gross receipts of all retail sales which they enter into unless they can point to a specific exemption." *Kollasch*, 104 Wis. 2d at 568. The Department contends that the transferring subsidiaries were in the "business" of "selling" assets to each other because they regularly engaged in these transactions "with the object of gain, benefit or advantage, either direct or indirect." *See* WIS. STAT. § 77.51(1) (defining "business"). The Department also points out that River City held a consumer use permit and that it did not successfully claim any specific statutory exemptions for these transactions before the Commission.

648

assessments on the intercompany fixed asset transfers: the transferring subsidiaries were not "retailers" and there was no consideration or remuneration involved. The Commission concluded that, in order to be taxable, a transfer must involve consideration or remuneration. It determined that the intercompany transfers of fixed assets in this case lacked consideration because they resulted in only bookkeeping entries that were accompanied by no exchange of money or other consideration and no expectation of payment or remuneration from River City.[17]

¶ 30. The Commission concluded that, although not explicitly required by the use tax imposition statute, WIS. STAT. § 77.53(1), the consideration requirement is implicit in the statutory scheme. We conclude this is a reasonable interpretation of the relevant statutes, and the Department does not argue otherwise. Section 77.53(1) imposes use tax on tangible personal property "purchased" from any retailer. "Purchase" is statutorily defined to include any "transfer of title, possession, ownership, enjoyment, or use . . . of tangible personal property *for a consideration.*" WIS. STAT. § 77.51(12)(a) (emphasis added). Although, unlike the definition of "purchase," the definition of "sale" in § 77.51(14) does not explicitly impose a consideration requirement, the Commission concluded that the language in the introductory part of § 77.51(14), and the

---

[17] In *Kollasch* and *Frisch*, the religious order and the law firm, respectively, received payment for the items each transferred to others. *See Kollasch,* 104 Wis. 2d at 558–59; *Frisch,* 133 Wis. 2d at 446–47. Thus, the question of taxability of the sales in those cases depended solely on whether the transferors were "retailers" within the meaning of sales tax statutes, there being no question that the transfers were for consideration.

eleven paragraphs which follow, imply a "transfer for remuneration or consideration."

¶ 31. The Department does not claim the Commission erred in concluding that only transfers involving consideration are subject to use tax. Rather, it contends the Commission erred in determining that the transfers at issue in this case were without consideration. The use tax statutes do not define "consideration" and the Commission did not expressly adopt one in its ruling, concluding only that no consideration was involved in the transfers at issue. In the absence of a statutory definition, the parties turn to common law and scholarly sources to ascertain the meaning of "consideration."

¶ 32. The Department points out that, under Wisconsin common law, consideration may consist of a benefit to the promisor or a detriment to the promisee. *See First Wisconsin Nat'l Bank v. Oby*, 52 Wis. 2d 1, 6, 188 N.W.2d 454 (1971). It also maintains that mutual promises are sufficient to establish consideration. *See Gustafson v. Physicians Ins. Co.*, 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Ct. App. 1998). Finally, the Department contends that a change of financial position can constitute consideration. *See Hardscrabble Ski Area, Inc. v. First Nat'l Bank*, 42 Wis. 2d 334, 344, 166 N.W.2d 191 (1969); *Home Sav. Bank v. Gertenbach*, 270 Wis. 386, 394–95, 71 N.W.2d 347 (1955). The Department asserts that, under these common law principles, consideration is present because River City "incurred a liability by crediting its intercompany payables account" for the book value of the assets it received, while the transferors recorded corresponding increases in their intercompany receivables accounts. In the Department's view, when River City made these bookkeeping entries, as required under Browning-Ferris accounting policies, the entries

memorialized binding promises to pay, or at a minimum, reflected changes in the parties' financial positions.

¶ 33. River City responds that the question whether a benefit constitutes consideration depends on whether the parties intend it to serve as consideration. *Stern v. Miner*, 239 Wis. 41, 45, 300 N.W. 738 (1941) ("Many things may constitute the consideration for a contract. It is the fact that they are the intended consideration that imports them into a contract.") River City acknowledges that it received a benefit in the form of physical assets it could use in its business, and perhaps from depreciating the assets for income/franchise tax purposes, but maintains that it neither paid nor promised to pay for the assets, and that the transferring entities had no expectation of payment from River City. In other words, in River City's view, the parties never intended there to be consideration for these transfers. In support, River City points to the affidavit of its controller, who averred that neither River City nor the transferring entities intended the bookkeeping entries to create promises to pay.[18]

---

[18] The controller's affidavit states: "The Intercompany Transfers were sometimes documented with various forms of written communication; however, none of those written documentations or communications ever resulted in or required a payment of cash or other consideration for the Intercompany Transfers." The Department would have us disregard the controller's affidavit because the affiant was an accountant, not an attorney, and was thus not competent to testify as to the meaning of the term "consideration." Even if he were an attorney, however, his averments would not be conclusive on the issue of the presence or absence of consideration, that being a legal conclusion for the Commission to reach and this court to review. We treat the affidavit simply as evidence of the Browning-Ferris subsidiaries' practices and expectations regarding payment for the transfers.

¶ 34. The Commission rejected the Department's contention that River City should be regarded as having paid for the assets simply because it depreciated them for franchise/income tax purposes, or because of the manner the transfers were accounted for. It also accepted River City's contention that it neither made payments of any kind for the assets, nor was payment expected of it. We conclude the Commission's determination that no consideration was given for the assets River City acquired from its sister corporations, thus rendering their acquisition something other than "purchases" for use tax purposes, was reasonable.

¶ 35. The Department contends, however, that the Commission should have looked to Generally Accepted Accounting Principles (GAAP) and Browning-Ferris's own internal *Policies and Procedures Manual,* which the Department claims support its view that River City gave consideration for these transfers. The Department asserts that, under GAAP, "crediting a payables account constitutes an unconditional promise to pay." The Department also contends that, under GAAP, an asset may be acquired in one of only three ways: by purchase, by gift or by contribution to capital. The Department maintains that, given the commercial context of the transfers, they cannot be viewed as gifts, and further, if they were gifts, River City would not have been able to depreciate them or report as gain less than all of the proceeds from their sale or disposition. The Department continues that, because the transfers were made in the ordinary course of business and not as part of an incorporation or corporate restructuring, the transfers could not have been contributions to capital either. Thus, in the Department's view, the only reasonable conclusion, or at least a more

reasonable one, is that the transfers at issue were purchases, rendering them subject to the use tax.

¶ 36. Although we find the Department's GAAP-based argument intriguing, we do not conclude that it renders the Department's position more reasonable than that of the Commission. River City points out that, under GAAP, Browning-Ferris must compile consolidated financial statements so that its shareholders, creditors and potential investors may determine the amount of overall equity that exists in the parent corporation. It maintains that the intercompany payable and receivable accounts (which net to zero on the books of the parent company) simply provide a method to track assets as they move among the Browning-Ferris subsidiaries, and the account entries in no way create or reflect an obligation on the part of a receiving subsidiary to pay for the transferred asset. River City also asserts that GAAP applies only to the parent company's consolidated statements, not to the balance sheets of the individual subsidiaries. In any event, the Department provides no authority, and we are aware of none, for the proposition that GAAP governs the taxability of a given transfer under Wisconsin's use tax statutes.[19]

¶ 37. The Department also cites Browning-Ferris's *Policies and Procedures Manual,* which re-

---

[19] In fact, in support of other arguments, the Department seems to rely in part on the longstanding principle that the taxability of a given transaction is determined, not by how a taxpayer characterizes it for accounting purposes, but by the substance of the transaction itself. *See, e.g., Miller v. Tax Comm'n,* 195 Wis. 219, 221, 217 N.W. 568 (1928) ("In applying income tax laws, courts will look beyond the mere form to the substance of a transaction for the purpose of ascertaining its true nature.").

quires transferring subsidiaries to itemize intercompany transfers on invoices and to promptly send the invoices to receiving subsidiaries. The manual also specifies that transferring subsidiaries are to credit their "intercompany receivables" accounts, and the receiving subsidiaries, their "intercompany payables" accounts. The Commission rejected the Department's argument that, by reflecting the book value of transferred assets as a "payable," River City acknowledged its obligation to pay for the assets, concluding instead that the accounting entries were "mere labeling" and "accounting adjustments" intended to track asset transfers, not evidence of either an obligation to pay on River City's part or an expectation of payments on the part of the transferring subsidiaries. We conclude, again, that the Commission's conclusion in this regard was reasonable, and that it would not be more reasonable, on the present record, to conclude that the internal bookkeeping practices of Browning-Ferris and its subsidiaries, standing alone, created consideration for the transfers at issue.[20]

¶ 38. The Department also asserts that the Commission placed undue emphasis on the fact of the

[20] A Department publication, "Wisconsin Sales and Use Tax Information," Publication 201 (11/02) at 9, *available at* *http://www.dor.state.wi.us/pubs/pb201.pdf* (last visited Feb. 2, 2006), provides additional support for the conclusion that liability for sales or use tax is tied to actual or expected "payment" in return for the transfer of tangible property, not the manner in which the transaction is accounted for: "If you are on a monthly reporting period (file monthly returns) and a sale occurs in January, the gross receipts from the sale must be reported on the January return, even though payment is not received until February or a later month." The example strongly suggests the Department generally recognizes that, even though sales tax liability for an accrual-method taxpayer is tied

common ownership of River City and the transferring companies, and, thus, unreasonably refused to recognize that the transactions at issue occurred between separate and distinct legal entities. The Department points out that the parent-and-subsidiary structure permits Browning-Ferris to compartmentalize risk and insulate itself from potential liabilities incurred by its subsidiaries, and that, although the parent files a consolidated federal income tax return, River City and its sister corporations are treated as separate entities for Wisconsin income tax purposes. According to the Department, once Browning-Ferris elected to separately incorporate River City, it must accept the consequences flowing from River City's separate legal existence, including liability for use tax on intercompany fixed-asset transfers.

¶ 39. In support of this argument, the Department relies on two prior rulings of the Commission, *Ladish Co., Inc. v. DOR*, Wis. Tax Rptr (CCH) ¶ 203–326 (WTAC 1992), and *Diagnostic Radiology Assocs. of Wisconsin, S.C. v. DOR*, Wis. Tax Rptr. (CCH) ¶ 400–087 (WTAC 1994). We agree with the Commission, however, that the Commission's present ruling is not precluded by, nor is it inconsistent with, the cited precedents. Both *Ladish* and *Diagnostic Radiology* involved attempts by taxpayers to use bookkeeping entries to camouflage certain transactions and avoid the payment of taxes. In *Ladish*, the parent corporation received funds from its subsidiary that both entities regarded as dividends. The taxpayer, however, recorded these payments on its books as loans and carried them in that fashion for two and one-half years. When the

---

to the time of transfer as opposed to the time of payment, there must still be actual payment or the expectation of payment to render the transaction taxable.

Department imputed interest on the purported loans and assessed income tax accordingly, the taxpayer attempted to avoid the assessment by arguing that the transactions were in fact dividends and it had treated them as loans on its books by mistake. The Commission upheld the assessment, concluding that a taxpayer should not be permitted to retroactively recharacterize a transaction in order to avoid tax liability.

¶ 40. In *Diagnostic Radiology*, a Wisconsin corporation with two shareholders leased a sophisticated scanning machine to another Wisconsin corporation, two of whose four shareholders were the same two individuals who owned the lessor company. Both corporations filed separate federal and state income tax returns. The lessor treated the machine as a leased asset, depreciated it, and reported rental payments as income. The lessee deducted rental payments as a business expense. When the Department assessed sales tax against the lessee, the lessee claimed that the corporations were like "two different pockets in the same pair of trousers" because they had two stockholders in common, and, thus, the lessee was effectively making rental payments to itself. The Commission rejected the contention, explaining that a taxpayer cannot claim to be a separate legal entity for federal and state income tax purposes and, at the same time, avoid sales tax via a claim of common ownership. *Diagnostic Radiology Assocs. of Wisconsin, S.C.*, Wis. Tax Rptr. (CCH) ¶ 400–087 ("A taxpayer cannot, in hindsight, recant its former transactions for ones that it might have made in order to obtain tax advantages.").

¶ 41. The Commission concluded that, unlike *Ladish* and *Diagnostic Radiology*, this case does not involve an attempt by a taxpayer to characterize or recharacterize a transaction in different ways to avoid

656

the payment of tax. We conclude the Commission reasonably distinguished its prior rulings, and it is not more reasonable to conclude that either or both precedents required the Commission to reach a different result in this case. Both prior cases reflect attempts by taxpayers to recharacterize a prior transaction or previously established legal relationship in order to obtain a tax benefit. We agree with the Commission that the general rule that a taxpayer must bear the tax consequences of choices or elections previously made does not govern the present facts. River City is not attempting to disavow that it is a separate and distinct legal entity from the subsidiaries from whom it received the assets, and it is not attempting to disguise or change the manner in which it has treated the transfers for either income tax or accounting purposes. If, as the Department claims, River City should not have depreciated the assets for income tax purposes or reported as income less than the entire sale proceeds for assets it later disposed of, questions we do not decide, it may be that River City underpaid income taxes to Wisconsin. Even if that is the case, however, it does not render unreasonable the Commission's conclusion that the transfers at issue were not subject to use tax because they did not involve consideration.

¶ 42. We share a final observation regarding the "related companies" issue. The *Diagnostic Radiology* case presents facts closer to the present facts than did *Ladish*, but the ruling is nonetheless distinguishable because the rental payments the Commission concluded were subject to sales tax were in fact paid by the lessee corporation to the related lessor. Thus, the lease of the machine was not without consideration, and a sales tax was imposed on payments that actually passed between the two corporations. Here, we have little

657

doubt the Commission would have upheld a use tax assessment on the fixed-asset transfers had River City actually made payments to the transferring companies for the book value of the assets it received. That is, we do not read the Commission's decision as resting on the common ownership of the transferor and transferee, but on its determinations that that the transactions were not mercantile in nature and that River City gave no consideration for the assets. The fact of common ownership was relevant only insofar as it explained how and why the transfers were made and accounted for by the Browning-Ferris subsidiaries.

¶ 43. Finally, the Department also seeks to rely on cases from other jurisdictions where bookkeeping entries were deemed to constitute consideration for certain transactions.[21] However, the fact that courts in other states may have reached conclusions different from the Commission on arguably similar facts does not render the Commission's ruling in this case unreasonable or the Department's desired result more reasonable.

¶ 44. The supreme court in *Kollasch* found the Wisconsin statutory definition of the term "retailer" lacking when applied to the dispute before it (see footnote 10). The court then looked, not to statutes or case law from other jurisdictions, but to a dictionary

---

[21] For example, the Ohio Supreme Court held in *Hawthorn Melody, Inc. v. Lindley*, 417 N.E.2d 1257 (Ohio 1981), that accounting entries analogous to those in this case constituted sufficient consideration for the purposes of imposition of sales tax. Similarly, changes made to an account used to record how much a company owed a person who made purchases for its benefit were similarly held to constitute sufficient consideration for the purposes of sales tax in *Hygrade Casket Corp. v. Comm'r of Taxation and Fin.*, 622 N.W.S.2d 140 (N.Y. App. Div. 1995).

definition, explaining that "recourse to dictionary definitions is an appropriate means of discerning legislative intent." *Kollasch*, 104 Wis. 2d at 566. Resort to a dictionary definition is also appropriate where the legislature has not provided a statutory definition of a term. *See Gallego v. Wal-Mart Stores, Inc.*, 2005 WI App 244, ¶ 13, 288 Wis.2d 229, 707 N.W.2d 539, *review granted*, (WI Jan. 20, 2006) (No. 2004AP2533). THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 434 (2d ed. 1987), provides the following pertinent definitions of "consideration": "**5.** a recompense or payment, as for work done; compensation . . . . **8.** *Law.* **a.** something that suffices to make an informal promise legally binding, usually some value given in exchange for the promise." The Commission's interpretation that the "consideration" necessary to render the fixed-asset transfers taxable requires actual or expected payments for the transfers, or something of value given in exchange for them, is consistent with this dictionary definition. We deem this a more valid criterion by which to gauge the reasonableness of the Commission's interpretation than how courts in other states may define the term.

¶ 45. In sum, we conclude that the Commission's determinations (1) that a transfer unaccompanied by consideration is not subject to the use tax, and (2) that the fixed-asset transfers in this case did not involve consideration, are reasonable and the Department's various proffered rationales for concluding to the contrary are not more reasonable.

### The Negligence Penalty

¶ 46. WISCONSIN STAT. § 77.60(3) provides that, "if due to neglect an incorrect [sales or use tax] return is filed," the Department may impose a 25% (50% in some

cases) negligence penalty. A taxpayer may avoid the penalty if it meets the "burden of proving that the error or errors were due to good cause and not due to neglect." *Id.* The Commission, concluding that River City had established good cause, set aside the negligence penalty the Department had assessed against River City.

¶ 47. It appears that the Department assessed the penalty against River City for not only the unpaid tax on the fixed-asset transfers, but also for unpaid use tax on other of River City's acquisitions of tangible personal property revealed in the audit. These included items River City claimed were covered by an exemption for recycling and waste reduction equipment. In its assessment, the Department gave the following reasons for assessing the penalty:

> The 2 major areas of contention in this audit are the recycling exemption for bins & containers and intercompany transfers. Both of these areas were addressed in the prior audit [of River City for an earlier time period]. On appeal, the t/p [taxpayer] was denied the exemption for collection bins & containers . . . . They also were assessed use tax on intercompany transfers of assets, based on the net book value of the assets at the time of the transfers. The t/p was told that these items were taxable but they continued to not pay sales tax on these items . . . . [T]he t/p definitely should have changed procedures to begin paying use tax on "recycling" bins/containers and on intercompany transfers of assets for [fiscal years ending] 9/30/95 - . . . 9/30/97. For these reasons, the 25% negligence penalty has been imposed for all audit years.

¶ 48. The parties agree that, when the assessment of a negligence penalty is appealed to the Commission, the Commission "reviews [the Department]'s reasons

for imposing a penalty." The Commission did so and concluded that, in both regards (the recycling bin issue and intercompany transfers), River City had established good cause for not reporting the acquisitions on their use tax returns. With respect to the intercompany fixed asset transfers, the Commission noted that the issue had been litigated before it and decided in the taxpayer's favor in the *Browning-Ferris Wisconsin* case, and, as to the recycling exemption issue, although the taxpayer ultimately lost, the final outcome of the litigation was not known until several years after the audit period in this case. The Commission concluded that it was not neglectful for River City to maintain a position similar to that being litigated by a sister corporation, and neither the fact that River City had elected to concede the issues for purposes of a prior audit, nor the fact that it chose to not report the acquisitions instead of paying the tax and requesting a refund, rendered its conduct "due to neglect."

■■■

¶ 49. Although we accorded the Commission only due weight deference with regard to its interpretation of the sales and use tax statutes relevant to the intercompany transfer issue, we conclude the Commission's decision to set aside the negligence penalty is entitled to great weight deference. We note first that the legislature has decreed, subject only to judicial review, the Commission is "the final authority for the hearing and determination of all questions of law and fact" in disputes between the Department and sales and use tax payers. *See* WIS. STAT. §§ 73.01(4)(a) and 77.59(6)(b). Moreover, if an "administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to 'great

weight.' " *William Wrigley, Jr., Co. v. DOR*, 176 Wis. 2d 795, 801, 500 N.W.2d 667 (1993). We conclude that, not only is the Commission generally recognized as possessing the requisite attributes for great weight deference when it determines whether to uphold assessments such as the negligence penalty at issue here, *see id.*, but it is also uniquely positioned to evaluate the interplay between River City's actions in this case and the issues being reviewed or litigated in other, similar disputes.

¶ 50. We will therefore sustain the Commission's decision regarding the negligence penalty if it is "merely . . . reasonable," and the burden is on the Department to show that the Commission's decision is unreasonable. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661, 539 N.W.2d 98 (1995). The Commission's interpretation and application of the penalty statute, Wis. Stat. § 77.60(3), is unreasonable only if it "directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." *Id.* at 662. We conclude the Commission's decision to set aside the negligence penalty in this case suffers from none of these three infirmities, and we therefore affirm it.

¶ 51. The Department would have us decide the negligence penalty issue de novo because the Commission did not discuss whether the penalty should apply given River City's failure to report acquisitions in three assessment categories other than recycling containers and the intercompany transfers. River City conceded its liability on the other items and makes no effort on appeal to justify its failure to report them. The Department, however, did not cite these other omissions as the reasons for assessing the negligence penalty against River City. As the Department concedes, the Commission's role is to review the reasons the Department gave for assess-

ing the penalty, not to make an independent determination whether other reasons might exist to penalize River City for filing incorrect use tax returns.

## CONCLUSION

¶ 52. For the reasons discussed above, we reverse the appealed order and reinstate the Tax Commission's Ruling and Order.

*By the Court.*—Order reversed.